153 So.2d 819 (1963)
The STATE of Florida and Honorable R.D. Hill, County Tax Collector, St. Johns County, Florida, Petitioners,
v.
Estate of Bertha Stone MOORE, deceased, Jean Moore Trudeau, Richard Channing Moore, David Channing Moore and Lewis Rhea Baxter, Executors, Respondents.
No. 32085.
Supreme Court of Florida.
May 29, 1963.
Richard W. Ervin, Atty. Gen., Edward S. Jaffry and A.G. Spicola, Asst. Attys. Gen., for petitioners.
Lewis Rhea Baxter, Jacksonville, for respondents.
THOMAS, Justice.
This controversy comes to the Supreme Court under Sec. 4 of Art. V of the Constitution, F.S.A. via petition for certiorari in which it is claimed that a decision of the District Court of Appeal, First District, conflicts with a decision of this court expressed in Heidt v. Caldwell, Fla., 41 So.2d 303, inasmuch as it was held in the cited case that Sec. 733.16, Florida Statutes 1959, F.S.A., did not apply to claims of the State of Florida, while in the instant case the District Court of Appeal held exactly the opposite.
The statute, so far as it relates to the present issue, required, until its amendment in 1961, that all demands against an estate would be void unless filed within eight months after the first publication of notice to creditors.
It was on 9 November 1959 that the notice to creditors of the estate of Bertha Stone Moore was first published; it was on 30 December 1960 that the Tax Collector *820 of St. Johns County filed the claim of the State of Florida for intangible taxes in the approximate sum of three thousand six hundred dollars. Soon after, an objection to the claim was made and motion to strike it was filed. The County Judge ruled the claim invalid because it was not presented within the period specified in the statute.
The matter was then taken to the District Court of Appeal where it was observed that the lone point for decision was whether or not the statute of non claim was applicable to claims of the State. The court referred to a decision of the Supreme Court of Florida, United States v. Summerlin, 140 Fla. 475, 191 So. 842, that the United States and its agencies were subject to the law the same as other creditors of estates, and to an opinion of the Supreme Court of the United States reversing the Summerlin judgment, United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283, and holding that such statutes were not apposite when claims of the sovereign were involved. The Supreme Court of Florida later held, on the authority of United States v. Summerlin, supra, that a claim of the United States was not barred although untimely and reversed an order of the county judge to the contrary. United States v. Embrey, 145 Fla. 277, 199 So. 41.
The District Court of Appeal opined that all claims except those of the United States were void unless filed within the time specified in the statute.
The appellants, now petitioners, contended that the philosophy of the cases determined by the Supreme Court of the United States excepting claims of the United States was entirely appropriate in dealing with claims of the State of Florida and relied upon the decision in Heidt v. Caldwell, supra, to buttress their position.
This brings us to an analysis of the Heidt case which the petitioners insist is in direct conflict with the decision by the District Court of Appeal in the immediate controversy. In considering the main question in dispute, the responsibility of the estate of a former inmate of the State Hospital for the Insane for the cost of the patient's maintenance and treatment, the court said that no language could be found in Sec. 733.16 that would prevent the State from recovering for the expense of supporting the insane decedent. But in relating the salient facts of the case the court stated that it was admitted that the claim had been filed within the period designated in the statute. In the discussion there appeared this sentence: "The language of this Section is not made applicable to the State of Florida." The court in the Heidt decision also cited the opinion in Florida Industrial Commission v. Felda Lumber Co. et al., 154 Fla. 507, 18 So.2d 362, in which it was declared that statutes of limitations will not affect claims of the State unless by express language they so provide.
Bearing in mind that decision on the applicability or inapplicability of the statute of non claim was not even relevant to the issues which were confined to the validity of Sec. 5 of Chapter 4357, Acts of 1895, providing that incompetents financially able to pay their way should do so, and the availability of the Statute of Limitations as a defense to the action by the Board of Commissioners of State Institutions to recover the cost of caring for the decedent at the hospital, not to mention the distinction between statutes of limitations and those of non claim we recognized in In Re Estate of Brown, deceased, Gulf Fertilizer Co. v. Robinson, Fla., 117 So.2d 478, it is obvious that the comment of the court in the Heidt case anent Sec. 733.16 was beside the point, that the words we have just quoted were obiter dicta. The respondents here term the observations "a nullity." The reference to the statute must have been inadvertent as the subject of non claim was completely dissociated from the matter with which the court was dealing.
The Attorney General replies that the court in treating of the jurisdictional *821 feature should not be disturbed by the charge that the language in the Heidt case amounted only to obiter dicta inasmuch as we have held that such irrelevant expressions may result in a conflict causing jurisdiction to attach here, citing our opinion in Sunad, Inc. v. City of Sarasota, Fla., 122 So.2d 611.
In that case if the reader delves into facts and dates and areas instead of extracting the isolated reference to lifting a statement from Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139, and indicating its "gratuitous character" it should appear why the court considered the ruling in conflict with a later case in which it was recognized that aesthetics could in certain circumstances affect the general welfare of the inhabitants of a community. The decision was rendered in 1917. Our first opinion specifying that aesthetics should be considered in judging the validity of zoning regulations appeared 24 years later in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364.
Meanwhile the entertainment of tourists had so developed into a major industry that we were prompted to say that in a city of the nature of Miami Beach the need for aesthetic appeal was so important that regulation of the use of property to that end justified exercise of the police power in the interest of the public welfare. Yet in the following years there often had been cited to us the Anderson decision of twenty odd years before.
Since the provision of Sec. 4, Art. V of the Constitution, as amended in 1956, providing for review by this court of a decision of a District Court of Appeal conflicting with one of this court or of another District Court of Appeal on the same point of law was designed to insure stability and dispel confusion, a majority of the court felt that jurisdiction justifiably attached.
While we think that the propriety of the detention of Anderson for constructing a sign in violation of a city ordinance could have been gauged without judging the merits of the ordinance, the court was at pains to analyze the ordinance and to discuss the regulation of the use of property for the protection of public morals, life and safety, then concluded that depriving one of the enjoyment of his property because the use would offend "the aesthetic or refined taste of other persons [was] quite another thing, and [could] not be exercised under the Constitution, forbidding the taking of property for a public use without compensation." Therefore, there was an intimate, though not an indispensable, connection between the essential facts and the quoted comment.
Although in the Heidt case Sec. 733.16 was not even remotely connected with the problem confronting the court and what the court said about the claim having been filed within the prescribed period rendered utterly feckless its comment about the inapplicability of the statute in such an instance, we think that the obiter dicta tends to confuse and that the decision in the Sunad case warrants our assuming jurisdiction.
Moreover we feel that in the determination of our jurisdiction in matters of conflict we should not undertake to sift the relevant-wheat from the obiter-chaff, and determine what of the former should be disregarded and what should be of sufficient substance to vest jurisdiction. The criterion is the presence or absence of confusion.
We take jurisdiction of the case and proceed to decide it upon the merits. In doing so we reject the argument that the philosophy expressed by the Supreme Court of the United States in the Summerlin case should govern this one.
In the case of Gulf Fertilizer Co. v. Robinson, supra, we said that the purpose of statutes of non claim is to expedite the settlement of estates in the interest of public welfare and for the benefit of *822 those interested in the estates. We think the State itself should be held to the same rule for the same reason. United States v. Embrey, 145 Fla. 277, 199 So. 41. In re Smith's Estate, Fla.App., 132 So.2d 426.
We conclude that the District Court of Appeal was correct when it affirmed the ruling of the county judge that the State's claim was filed too late.
The petition for certiorari is denied.
ROBERTS, C.J., and TERRELL, O'CONNELL and CALDWELL, JJ., concur.