290 So.2d 566 (1974)
TOWN OF LANTANA, Petitioner,
v.
Jim PELCZYNSKI, Respondent.
No. 73-1066.
District Court of Appeal of Florida, Fourth District.
February 28, 1974.
*567 Charles W. Musgrove, West Palm Beach, for petitioner.
John L. Parker, Jr., West Palm Beach, for respondent.
DOWNEY, Judge.
By petition for writ of certiorari review is sought of an order of the circuit court holding a municipal ordinance of the Town of Lantana unconstitutional.
On the eve of the annual election of town officials, respondent circulated a letter entitled, "To Lantana With Love", wherein he charged the incumbent mayor, a candidate for reelection, was unable to devote sufficient time to town business due to his other activities, all of which it was claimed redounded to the detriment of the town. As fortune would have it the incumbent lost the following day, and in due course respondent was tried and convicted in municipal court for violating Town Ordinance 8-20. On appeal the circuit court held that the ordinance violated Article I, Sections 4 and 9 of the Florida Constitution, *568 F.S.A. and the First Amendment to the Federal Constitution. Ordinance 8-20 provides as follows:
"It shall be unlawful for any candidate or other person, during seven (7) days preceding the day of any election, to publish or circulate or cause to be published or circulated any charge against or attack against any candidate unless such charge or attack has been personally served upon the candidate at least seven (7) days prior to the day of election, and any person failing to comply with this section shall, upon conviction, be guilty of a violation of the code of Lantana. Any answer to a charge or attack that contains defensive matter shall not be construed to be a charge or attack."
Petitioner contends that the circuit court judgment holding the foregoing ordinance unconstitutional is a departure from the essential requirements of law, in that it is directly contrary to the holding of the Supreme Court of Florida in Ex parte Hawthorne, 116 Fla. 608, 156 So. 619 (1934). In the well considered decision sought to be reviewed (reported at 39 Fla. Supp. 76), the Honorable Marvin U. Mounts, Jr., found that Ex parte Hawthorne, supra, was not controlling; that the rule announced in Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) and Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), contained the guide lines for the decision in this case.
The Lantana ordinance in question was patterned after the statute involved in Ex parte Hawthorne. There the Supreme Court held that a radio address by defendant Hawthorne attacking a candidate for the office of county solicitor and a newspaper publication of that radio address by codefendant Mahoney did not constitute violations of the statute even though no copy of the attack had been served upon the candidate eighteen days prior to the election. The statute did not apply to campaign radio addresses or the newspaper publication thereof. Since the Supreme Court held that the statute did not apply to the acts complained of, the remainder of the decision pertaining to the constitutionality of the statute is obiter dictum, and we would be justified in finding that, though persuasive, it is not binding precedent. State ex rel. Biscayne Ken. Cl. v. Board of Bus. Reg., Fla. 1973, 276 So.2d 823; 8 Fla. Jur., Courts, § 168. However, we need not rest our decision there.
Ex parte Hawthorne, supra, was decided in 1934. Since then the United States Supreme Court has decided Mills v. Alabama, supra, wherein the editor of a local newspaper was convicted of violating an Alabama statute which made it a crime for any person to (among other things) do any electioneering on election day or solicit votes in support of any proposition on the ballot or any candidate on election day. The editor had written an editorial urging the electorate to support the affirmative of a proposition on the ballot. On appeal the Supreme Court of Alabama found that the statute did restrict the editor's freedom of press on election day. Nevertheless the court sustained the constitutionality of the statute on the ground that the restrictions on the press were "reasonable restrictions"; they imposed only minor limitations on the press; and the law served a good purpose because it protected the public from confusive last-minute charges and countercharges and the distribution of propaganda in an effort to influence voters on election day when lack of time precluded response. In unanimously striking down the statute as an abridgement of the freedom of the press, the Supreme Court of the United States said none of the lofty ends was relevant on the question of constitutionality vel non of the statute. Yet, arguments made in support of the Lantana ordinance are the same as those made in support of the Alabama statute: the restraint is not unreasonable; it serves a good purpose; it was imposed in the interest of fair play  to prevent "dirty tricks" ! The Court makes a telling point in Mills when it states, "(The act) silences the *569 press at a time when it can be most effective", i.e., at or around the date of the election.
It appears to us that the ordinance in question constitutes a prior restraint on freedom of speech which has been generally condemned by the Supreme Court of the United States. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Surely, it is unfair for one to withhold charges against a candidate until the eleventh hour before divulging them so that the candidate cannot effectively reply. However, in order to prevent that abuse is it constitutionally permissible to prevent dissemination of all true, newly learned charges which the electorate should know about a candidate simply because the facts were learned after some arbitrary date? The time immediately preceding an election is the period during which the public's need for knowledge is at its height. Cf. Bridges v. California, 314 U.S. 252, 269, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346 (1941). Prior restraint on freedom of speech cannot be justified on the basis that there might be some abuse. As stated in Near v. Minnesota, supra:
"The fact that the liberty of the press may be abused by miscreant purveyors of scandal does not make any the less necessary the immunity of the press from previous restraint in dealing with official misconduct." 283 U.S. at 720, 51 S.Ct. at 632.
Freedom from prior restraint upon speech and press extends to false, as well as true statements. Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907).
Petitioner argues that Mills is inapposite because the letter which was published in the present case does not make respondent a member of the press. Such a position is untenable as the Supreme Court has long since held in Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), that the press includes not only newspapers, books, and magazines, but also humble leaflets and circulars. As respondent puts it, you do not have to be a card carrying member of the Associated Press or the New York Times to be entitled to the protection of the First Amendment.
Finally, petitioner cites the recent decision of the Supreme Court of Florida in Tornillo v. The Miami Herald Publishing Company, Fla. 1973, 287 So.2d 78, as reaffirming the pronouncements contained in Ex parte Hawthorne, supra. We find that the Tornillo case simply holds the statute there involved, § 104.38 F.S. 1971, F.S.A., was constitutional because it was not an incursion upon First Amendment rights, in that it did not restrain the flow of information. The footnote reference to Hawthorne cannot be taken as anything more than a reference to the legislative intent underlying the Corrupt Practices Act of 1913. In all events, since Mills v. Alabama, supra, was a decision of the United States Supreme Court on the same federal question involved in the present case, we must follow the decision in Mills v. Alabama, supra, State ex rel. Hawkins v. Board of Control of Florida, Fla. 1950, 47 So.2d 608; 8 Fla.Jur., Courts, § 175.
Having concluded that the ordinance is constitutionally infirm as an abridgement of the First Amendment to the United States Constitution, we need not treat the question of vagueness of the ordinance.
The petition for writ of certiorari is denied.
MAGER, J., concurs.
WALDEN, J., dissents with opinion.
WALDEN, Judge (dissenting):
I would grant certiorari and overturn the Circuit Court judgment.
*570 The right of free speech is not an absolute right. In specific situations it may be required to yield to valid state or local interests springing from public necessity. See State v. Mayhew, 288 So.2d 243 (Fla. 1973); Stephens v. Stickel, 146 Fla. 104, 200 So. 396 (1941); Lieberman v. Marshall, 236 So.2d 120, Fla. 1970; 6 Fla.Jur., Constitutional Law, §§ 217, 220; 16 Am.Jur.2d, Constitutional Law, §§ 302, 340 and 345.
It is my firm persuasion that the ordinance is constitutional. It serves a most laudable purpose in guarding against the perversion and abuse of the democratic elective process, which process is utterly essential to the continued good political health of our nation. In the vernacular, it recognizes and protects the purity of our elective procedures from a specific "dirty trick." The targeted "dirty trick" is the practice of waiting until just before election to circulate an attack on a candidate after the time has passed when the candidate would have a fair chance to answer and defend. As I view it, the only person who might have cause to complain is the rascal who so waits to attack, knowing that the prospective voter will have only one side of the matter, and hoping that the voter will thereby prejudicially judge the assaulted candidate. The voter must not be denied the opportunity to hear both sides. The circumstance might be compared to a request that the jury decide a law case based only on the charge and the plaintiff's evidence  without answer or defense. Of course, in both instances the results will be predicably unfair and unjust.
Yes, there is necessarily some infringement upon the right of free speech. However, when we assay the ordinance's contribution to public welfare and necessity in the interest of fair elections and a justly informed electorate, the cost is very little and the produce great.
It is to be emphasized that the ordinance does not prohibit editorializing, electioneering or vote soliciting at any time  only the making of new charges within seven days before the election. It specifically allows answers or defenses to charges within that seven day period.
In a way it might be said that the ordinance promotes First Amendment goals  in the absence of the law, the assaulted candidate is deprived of his right to speech and to speak in answer to the new attack simply because he has no time to do so.
In very short exposition to those who abhor even the slightest encroachment on free speech, it should be remembered that certain persons are prohibited or limited as to the amount they can spend espousing their choice of candidates, whether in newspapers, radio, television or otherwise. Chapter 73-128, § 8, 1973 Florida Session Laws. The right of speech and circular distribution is regulated and limited in and around the polling booths and places where politicking is disallowed. Many other examples could be advanced. See § 104.38, F.S. 1971, F.S.A., and Chapter 104, F.S. 1971, F.S.A.
In short, I suggest that the regulation is minimal and reasonable and same is well justified in the name of public welfare and necessity.
Are we without rudder in determining the question? The case of Ex parte Hawthorne, 116 Fla. 608, 156 So. 619 (1934), decided by our Supreme Court, addresses itself and at length to this very issue. Precisely stating that a comparable law was not constitutionally infirm, it said:
"[Section 8189, Comp.Gen.Laws, section 5925 makes] it unlawful for any candidate or other person ... to publish or circulate [in an 18 day period before an election] any charge or attack ... unless a `copy' of such ... has been ... served upon the candidate against whom made, at least eighteen days prior to the [election]." Id. 116 Fla. at 617, 156 So. at 622.

*571 "We construe section 8189, C.G.L., ... as an effort on the part of the Legislature to exercise its police power to promote fair play and fair competition .... As so construed by us, it has not been made to appear that [the law] is on its face violative of any provision of either the State or Federal Constitution on the subject of free speech or liberty of the press, nor that its operation is any wise subversive of anyone's constitutional liberty." Id. at 619 and 620, 156 So. at 623.
But the majority chose to denominate the Hawthorne pronouncement as dicta and, therefore, to ignore the rationale there expressed. I would not so cavalierly relegate the Supreme Court reasoning to the ash can, particularly where there has been no other Florida precedent in the subject area. The subject statute has since been repealed, but Hawthorne has not lost its import.
We know that we should give such dictum persuasive weight and Supreme Court dictum is not without value as precedent. O'Sullivan v. City of Deerfield Beach, 232 So.2d 33 (4th D.C.A.Fla. 1970); Weisenberg v. Carlton, 233 So.2d 659 (2nd D.C. A.Fla. 1970); Milligan v. State, 177 So.2d 75 (2nd D.C.A.Fla. 1965). Moreover, even assuming the accuracy of the majority characterization of Hawthorne, I would remind that the Supreme Court itself is of the opinion that its dicta views are of some moment and worthy of consideration even at jurisdictional depth. In State v. Moore's Estate, 153 So.2d 819 (Fla. 1963), there was reflected a conflict between a decision of a District Court of Appeal and obiter dicta contained in a Supreme Court opinion. The Supreme Court said:
"[We] feel that in the determination of our jurisdiction in matters of conflict we should not undertake to sift the relevant-wheat from the obiter-chaff, and determine what of the former should be disregarded and what should be of sufficient substance to vest jurisdiction. The criterion is the presence or absence of confusion." Id. at 821.
And so with that expressed criteria I would hazard that the instant majority opinion conflicts with the thorough opinion contained in Hawthorne, supra, and thereby creates confusion. There are two judicial expressions on the issue which can in nowise be reconciled. The Supreme Court says such laws are constitutional. We say otherwise. Public officials, Bench and Bar will not know what course to take. Shall the ordinances be scrapped or enforced? I think a happier and more orderly course for the majority to take would have been to follow and be persuaded by Hawthorne and thereafter certify the question to the Supreme Court.
And what now of the federal cases which the majority says mandate a finding of unconstitutionality; those cases being Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), and Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966);[1] Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Cf. Bridges v. California, 314 U.S. 252, 269, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346 (1941). According to my review, none of them command the result reached by the majority.
The Austin case concerned a totally different situation and had nothing whatever to do with elections, the elimination of dirty tricks, or of legislative enactments. *572 There a trial court had enjoined a certain group "from passing out pamphlets, leaflets or literature of any kind, and from picketing anywhere in the City of Westchester, Illinois." This is simply not in the same ball field with the instant controversy and predictably and correctly that injunction was vacated as a prior restraint on expression. There it was found that there was no justification for the restraint, but justifications do exist here.
The Mills case dealt specifically with whether the government could make it a crime for a newspaper editor to write and publish editorials on election day urging people to vote a certain way on issues submitted to them on that day. Simply, the issue was whether the electorate should vote to keep the city commission form of government or replace it with a mayor-council government. On election day the editor wrote and published an editorial urging the people to adopt the mayor-council proposition. The Alabama act provided:
"[It is a crime] to do any electioneering or to solicit any votes ... in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held." Mills v. Alabama, 384 U.S. at 216, 86 S.Ct. at 1435.
I think the differences are manifest and important. The Lantana ordinance would permit the conduct prohibited in Mills.
In Mills it was related:
"The Alabama Corrupt Practices Act by providing criminal penalties for publishing editorials such as the one here silences the press at a time when it can be most effective." (Emphasis added.) 384 U.S. at 219, 86 S.Ct. at 1437.
and
"The state statute leaves people free to hurl their campaign charges up to the last minute of the day before election ... [and] ... then goes on to make it a crime to answer those `last minute' charges on election day, the only time they can be effectively answered. Because the law prevents any adequate reply to these charges, it is wholly ineffective in protecting the electorate from ... `last-minute charges.'" (Emphasis added.) 364 U.S. at 220, 86 S.Ct. at 1437.
A careful reading of the Lantana ordinance will reveal that none of the deficiencies that marked the Alabama law are present, and, in fact, the Lantana ordinance is one that the Mills court would likely approve; 1) the court indicates that protecting the public from last minute changes is a proper objective, 2) the Lantana ordinance does not allow charges up to the last day of election, 3) does not make it a crime to answer last minute charges (made  for example  eight days before the election), because the last sentence in the ordinance reads:
"Any answer to a charge or attack that contains defensive matter shall not be construed to be a charge or attack," (Emphasis added.)
4) does therefore protect the electorate from last minute charges, and 5) does not silence the press at a time when it can be most effective since the instant ordinance does not preclude vote solicitation or editorial statements  as did the statute in Mills , but only precludes publicized charges against a candidate within a short time before election.
The remaining cases relied upon by the majority pattern in the area of prior improper restraints on free speech. Indeed, there can be no academic criticism of them, however from the synopsis that follow I submit that it is manifest either that they are factually dissimilar or that the enormity of the restraint clearly outweighs the validity or disability of the goal.
In Near v. Minnesota, Minnesota laws allowed for abatement of malicious papers. *573 The case arose because a newspaper wrote serious critical charges about the political administration. It requested grand jury, etc. The "scandal" warranted shutting off the press, or so the politicals and law officers believed. The paper denied the articles were malicious or scandalous. The Minnesota statute, allowing suppression as a public nuisance of a "scandalous" newspaper, was found to be unconstitutional. It was unconstitutional because it censored the paper  forever.
In Grosjean v. American Press Co., there was involved the imposition of a tax by the Louisiana Legislature of 2% of the gross receipts of any business making a charge for advertisements (for example  magazines, newspapers or periodicals). The cut-off was made: the tax applied to any such business with a circulation of more than 20,000 copies. The court saw the imprint of the heinous English "stamp tax" in this law and found that it was an improper restraint upon speech. The tax was not an ordinary tax but a tax which was discriminatory and had had a history of misuse against freedom of the press.
In Thornhill v. Alabama, a loitering statute disallowed picketing of business with intent to influence others to do their trade elsewhere. Defendant picketed. The statute was found to be an improper restraint on free speech.
In Bridges v. California, petitioners were adjudged in contempt because they allowed publishing of comments relating to pending litigation. They claim its abridgment of freedom of the press. The petitioners were discharged because the comments published were not seen to have impeded justice.
And in Patterson v. Colorado, defendant appealed a contempt charge and judgment for a politically satirical cartoon and editorial articles indicating the judiciary were less than honest. Although petitioner claimed the statements were true, the Supreme Court held the statements did subject him to contempt proceedings if they obstructed justice. The court said that the right of free speech extended to the false and true statement but did not think the contempt finding violated the constitution since both false and true statements were liable to contempt proceedings if they impeded justice.
And so, in sum and in conclusion, there is persuasive precedent in Florida case law to uphold the ordinance and, according to my understanding, no controlling Federal authority to the contrary.
For the above reasons I do most respectfully record this dissent.
NOTES
[1] The Attorney General of the State of Florida, in his Opinion No. 074-51 of February 21, 1974, discusses Mills v. Alabama in detail with reference to F.S. 104.35, Laws of Florida (1971), F.S.A. He concludes that this statute, which prohibits the publication by a newspaper on election day of political advertisements, messages, or quoted statements against a candidate, is valid.