## MILLS *v.* ALABAMA.

No. 597. Argued April 19, 1966.—Decided May 23, 1966.

*Kenneth Perrine* and *Alfred Swedlaw* argued the cause and filed a brief for appellant.

*Leslie Hall,* Assistant Attorney General of Alabama, and *Burgin Hawkins* argued the cause for appellee. With them on the brief was *Richmond M. Flowers,* Attorney General.

Briefs of *amici curiae,* urging reversal, were filed by *James C. Barton* for the Alabama Press Association et al.,

and by *Charles Morgan, Jr., Melvin L. Wulf* and *C. H. Erskine Smith* for the American Civil Liberties Union et al.

MR. JUSTICE BLACK delivered the opinion of the Court.

The question squarely presented here is whether a State, consistently with the United States Constitution, can make it a crime for the editor of a daily newspaper to write and publish an editorial *on election day* urging people to vote a certain way on issues submitted to them.

On November 6, 1962, Birmingham, Alabama, held an election for the people to decide whether they preferred to keep their existing city commission form of government or replace it with a mayor-council government. On election day the Birmingham Post-Herald, a daily newspaper, carried an editorial written by its editor, appellant, James E. Mills, which strongly urged the people to adopt the mayor-council form of government.[1] Mills was later arrested on a complaint charging that by

---

[1] The editorial said in part: "Mayor Hanes' proposal to buy the votes of city employees with a promise of pay raises which would cost the taxpayers nearly a million dollars a year was cause enough to destroy any confidence the public might have had left in .him.

"It was another good reason why the voters should vote overwhelmingly today in favor of Mayor-Council government.

"Now Mr. Hanes, in his arrogance, proposes to set himself up as news censor at City Hall and 'win or lose' today he says he will instruct all city employees under him to neither give out news regarding the public business with which they are entrusted nor to discuss it with reporters either from the Post-Herald or the News.

. . . . .

"If Mayor Hanes displays such arrogant disregard of the public's right to know on the eve of the election what can we expect in the future if the City Commission should be retained?

"Let's take no chances.

"Birmingham and the people of Birmingham deserve a better break. A vote for Mayor-Council government will give it to them."

216

publishing the editorial *on election day* he had violated § 285 of the Alabama Corrupt Practices Act, Ala. Code, 1940, Tit. 17, §§ 268–286, which makes it a crime "to do any electioneering or to solicit any votes . . . in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held." [2] The trial court sustained demurrers to the complaint on the grounds that the state statute abridged freedom of speech and press in violation of the Alabama Constitution and the First and Fourteenth Amendments to the United States Constitution. On appeal by the State, the Alabama Supreme Court held that publication of the editorial on election day undoubtedly violated the state law and then went on to reverse the trial court by holding that the state statute as applied did not unconstitutionally abridge freedom of speech or press. Recognizing that the state law did limit and restrict both speech and press, the State Supreme Court nevertheless sustained it as a valid exercise of the State's police power chiefly because, as that court said, the press "restriction, everything considered, is within the field of reasonableness" and "not an unreasonable limitation upon free speech, which includes

---

[2] "§ 285 (599) Corrupt practices at elections enumerated and defined.—It is a corrupt practice for any person on any election day to intimidate or attempt to intimidate an elector or any of the election officers; or, obstruct or hinder or attempt to obstruct or hinder, or prevent or attempt to prevent the forming of the lines of the voters awaiting their opportunity or time to enter the election booths; or to hire or to let for hire any automobile or other conveyance for the purpose of conveying electors to and from the polls; or, to do any electioneering or to solicit any votes or to promise to cast any votes for or against the election or nomination of any candidate, or in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held." Ala. Code, 1940, Tit. 17.

free press." 278 Ala. 188, 195, 196, 176 So. 2d 884, 890. The case is here on appeal under 28 U. S. C. § 1257 (1964 ed.).

## I.

The State has moved to dismiss this appeal on the ground that the Alabama Supreme Court's judgment is not a "final judgment" and therefore not appealable under § 1257.[3] The State argues that since the Alabama Supreme Court remanded the case to the trial court for further proceedings not inconsistent with its opinion (which would include a trial), the Supreme Court's judgment cannot be considered "final." This argument has a surface plausibility, since it is true the judgment of the State Supreme Court did not literally end the case. It did, however, render a judgment binding upon the trial court that it must convict Mills under this state statute if he wrote and published the editorial. Mills concedes that he did, and he therefore has no defense in the Alabama trial court. Thus if the case goes back to the trial court, the trial, so far as this record shows, would be no more than a few formal gestures leading inexorably towards a conviction, and then another appeal to the Alabama Supreme Court for it formally to repeat its rejection of Mills' constitutional contentions whereupon the case could then once more wind its weary way back to us as a judgment unquestionably final and appealable. Such a roundabout process would not only be an inexcusable delay of the benefits Congress intended to grant by providing for appeal to this Court, but it would also result in a completely unnecessary waste of time and energy in judicial systems already troubled by delays due

---

[3] Section 1257 provides in part: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . ."

to congested dockets.[4] The language of § 1257 as we
construed it in *Pope* v. *Atlantic Coast Line R. Co.*, 345
U. S. 379, 381–383, does not require a result leading to
such consequences. See also *Construction Laborers* v.
*Curry*, 371 U. S. 542, 548–551; *Richfield Oil Corp.* v.
*State Board*, 329 U. S. 69, 72–74. Following those cases
we hold that we have jurisdiction.

## II.

We come now to the merits. The First Amendment,
which applies to the States through the Fourteenth, pro-
hibits laws "abridging the freedom of speech, or of the
press." The question here is whether it abridges free-
dom of the press for a State to punish a newspaper editor
for doing no more than publishing an editorial on elec-
tion day urging people to vote a particular way in the
election. We should point out at once that this question
in no way involves the extent of a State's power to regu-
late conduct in and around the polls in order to maintain
peace, order and decorum there. The sole reason for the
charge that Mills violated the law is that he wrote and
published an editorial on election day urging Birming-
ham voters to cast their votes in favor of changing their
form of government.

Whatever differences may exist about interpretations
of the First Amendment, there is practically universal
agreement that a major purpose of that Amendment was
to protect the free discussion of governmental affairs.
This of course includes discussions of candidates, struc-
tures and forms of government, the manner in which gov-
ernment is operated or should be operated, and all such

---

[4] This case was instituted more than three and one-half years ago.
If jurisdiction is refused, we cannot know that it will not take
another three and one-half years to get this constitutional question
finally determined.

matters relating to political processes. The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars, see *Lovell* v. *Griffin,* 303 U. S. 444, to play an important role in the discussion of public affairs. Thus the press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve. Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change, which is all that this editorial did, muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free. The Alabama Corrupt Practices Act by providing criminal penalties for publishing editorials such as the one here silences the press at a time when it can be most effective. It is difficult to conceive of a more obvious and flagrant abridgment of the constitutionally guaranteed freedom of the press.

Admitting that the state law restricted a newspaper editor's freedom to publish editorials on election day, the Alabama Supreme Court nevertheless sustained the constitutionality of the law on the ground that the restrictions on the press were only "reasonable restrictions" or at least "within the field of reasonableness." The court reached this conclusion because it thought the law imposed only a minor limitation on the press—restricting it only on election days—and because the court thought the law served a good purpose. It said:

"It is a salutary legislative enactment that protects the public from confusive last-minute charges and countercharges and the distribution of propaganda in an effort, to influence voters on an election day;

when as a practical matter, because of lack of time, such matters cannot be answered or their truth determined until after the election is over." 278 Ala. 188, 195–196, 176 So. 2d 884, 890.

This argument, even if it were relevant to the constitutionality of the law, has a fatal flaw. The state statute leaves people free to hurl their campaign charges up to the last minute of the day before election. The law held valid by the Alabama Supreme Court then goes on to make it a crime to answer those "last-minute" charges on election day, the only time they can be effectively answered. Because the law prevents any adequate reply to these charges, it is wholly ineffective in protecting the electorate "from confusive last-minute charges and countercharges." We hold that no test of reasonableness can save a state law from invalidation as a violation of the First Amendment when that law makes it a crime for a newspaper editor to do no more than urge people to vote one way or another in a publicly held election.

The judgment of the Supreme Court of Alabama is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN joins, concurring.

Although I join the opinion of the Court, I think it appropriate to add a few words about the finality of the judgment we reverse today, particularly in view of the observation in the separate opinion of MR. JUSTICE HARLAN that "limitations on the jurisdiction of this Court . . . should be respected and not turned on and off at the pleasure of its members or to suit the convenience of litigants."

The decision of the Alabama Supreme Court approved a law which, in my view, is a blatant violation of free-

dom of the press. The threat of penal sanctions has, we are told, already taken its toll in Alabama: the Alabama Press Association and the Southern Newspaper Publishers Association, as *amici curiae,* tell us that since November 1962 editorial comment on election day has been nonexistent in Alabama. The chilling effect of this prosecution is thus anything but hypothetical; it is currently being experienced by the newspapers and the people of Alabama.

We deal here with the rights of free speech and press in a basic form: the right to express views on matters before the electorate. In light of appellant's concession that he has no other defense to offer should the case go to trial, compare *Pope* v. *Atlantic Coast Line R. Co.,* 345 U. S. 379; *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69, and considering the importance of the First Amendment rights at stake in this litigation, it would require regard for some remote, theoretical interests of federalism to conclude that this Court lacks jurisdiction because of the unlikely possibility that a jury *might* disregard a trial judge's instructions and acquit.

Indeed, even had appellant been unwilling to concede that he has no defense—apart from the constitutional question—to the charges against him, we would be warranted in reviewing this case. That result follows *a fortiori* from our holdings that where First Amendment rights are jeopardized by a state prosecution which, by its very nature, threatens to deter others from exercising their First Amendment rights, a federal court will take the extraordinary step of enjoining the state prosecution. *Dombrowski* v. *Pfister,* 380 U. S. 479; *Cameron* v. *Johnson,* 381 U. S. 741. As already noted, this case has brought editorial comment on election day to a halt throughout the State of Alabama. Our observation in *NAACP* v. *Button,* 371 U. S. 415, 433, has grim relevance here: "The threat of sanctions may deter . . .

exercise [of First Amendment rights] almost as potently as the actual application of sanctions." *

For these reasons, and for the reasons stated in the opinion of the Court, I conclude that the judgment is final.

Separate opinion of MR. JUSTICE HARLAN.

In my opinion the appellant is not here on a "final" state judgment and therefore under 28 U. S. C. § 1257 (1964 ed.) the Court has no jurisdiction to entertain this appeal. *Republic Natural Gas Co.* v. *Oklahoma,* 334 U. S. 62; cf. *Parr* v. *United States,* 351 U. S. 513.

Although his demurrer to the criminal complaint has been overruled by the highest court of the State, the appellant still faces a trial on the charges against him. If the jury [1] fails to convict—a possibility which, unless the courtroom antennae of a former trial lawyer have become dulled by his years on the bench, is by no means remote in a case so unusual as this one is—the constitutional issue now decided will have been prematurely adjudicated. But even were one mistaken in thinking that a jury might well take the bit in its teeth and acquit, despite the Alabama Supreme Court's ruling on the demurrer and the appellant's admitted authorship of the editorial in question, the federal statute nonetheless commands us not to adjudicate the issue decided until the

---

*In *California* v. *Stewart,* 383 U. S. 903, where a state court reversed a criminal conviction on federal grounds, we ruled on a motion to dismiss that the State may obtain review in this Court even though a new trial remained to be held. We reached that conclusion because otherwise the State would be permanently precluded from raising the federal question, state law not permitting the prosecution to appeal from an acquittal. And see *Construction Laborers* v. *Curry,* 371 U. S. 542; *Mercantile National Bank* v. *Langdeau,* 371 U. S. 555.

[1] At oral argument in this Court appellant's counsel conceded that a jury trial was still obtainable, see Ala. Code, Tit. 13, § 326; Tit. 15, § 321 (1958 Recomp.), and that it might result in an acquittal.

prosecution has run its final course in the state courts, adversely to the appellant.

Although of course much can be said in favor of deciding the constitutional issue now, and both sides have indicated their desire that we do so, I continue to believe that constitutionally permissible limitations on the jurisdiction of this Court, such as those contained in § 1257 undoubtedly are, should be respected and not turned on and off at the pleasure of its members or to suit the convenience of litigants.[2] If the traditional federal policy of "finality" is to be changed, Congress is the body to do it. I would dismiss this appeal for want of jurisdiction.

Since the Court has decided otherwise, however, I feel warranted in making a summary statement of my views on the merits of the case. I agree with the Court that the decision below cannot stand. But I would rest reversal on the ground that the relevant provision of the Alabama statute—"to do any electioneering or to solicit any votes [on election day] . . . in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held"—did not give the appellant, particularly in the context of the rest of the statute (*ante,* p. 216, n. 2) and in the absence of any relevant authoritative state judicial decision, fair warning that the publication of an editorial of this kind was reached by the foregoing provisions of the Alabama Corrupt Practices Act. See *Winters* v. *New York,* 333 U. S. 507. I deem a broader holding unnecessary.

---

[2] Compare *Construction Laborers* v. *Curry,* 371 U. S. 542, and *Mercantile National Bank* v. *Langdeau,* 371 U. S. 555. The three cases cited by the Court, *ante,* p. 218, fall short of supporting the "finality" of the judgment before us. None of them involved jury trials, and in each instance the case was returned to the lower court in a posture where as a practical matter all that remained to be done was to enter judgment. What is done today more than ever erodes the final judgment rule.