Barbara **CALCHERA** and Paul Whiteside, Plaintiffs,

v.

Gail **PROCARIONE** in his capacity as City Clerk of the City of Kenosha, Wisconsin and the City of Kenosha, a Municipal Corporation, Defendants.

No. 92–C–745 (JPS).

United States District Court, E.D. Wisconsin.

Oct. 28, 1992.

Terry W. Rose, Rose & Rose, Kenosha, Wis., for plaintiffs.

James W. Conway, City Atty., Kenosha, Wis., for defendants.

## DECISION AND ORDER

STADTMUELLER, District Judge.

### Introduction

In this action, plaintiffs challenge the constitutionality of a Wisconsin statute which prohibits electioneering within 500 feet of an election place on election day. Wis.Stat.Ann. § 12.03(2) (West 1986). The case is now before the court on plaintiffs' motion for summary judgment.

### Facts and Procedural History

The plaintiffs, Barbara Calchera and Paul Whiteside, reside across the street from the Southport School, an official polling place in the City of Kenosha. To support their candidates of choice, and with the intent to influence the votes of others, plaintiffs posted political campaign signs in their front yards for the April 7, 1992 election. However, because of the proximity of plaintiffs' homes to the Southport School, an agent of defendants ordered the signs removed, and threatened to cite plaintiffs for electioneering within 500 yards of an official polling place in violation of Section 12.03. Defendants' agent removed the sign from Ms. Calchera's yard. The sign in Mr. Whiteside's yard was not removed, but was replaced within the yard at a distance of 501 feet from the Southport School.

In order to prevent defendants or their agents from removing similar signs in the future, plaintiffs filed this action on July 22, 1992, challenging the constitutionality of Section 12.03, seeking declaratory and injunctive relief, as well as attorney's fees and costs. Plaintiffs' complaint alleged that Section 12.03 is impermissibly broad because it "directly proscribes speech that is protected by the First and Fourteenth Amendments," Complaint at 4, and because the protected zone created under this section is too large, since it encompasses private residences. Plaintiffs further alleged that the statute violates the equal protection clause of the Fourteenth Amendment because it deprives homeowners within the protected zone of the opportunity to post

signs in support of their favored candidates, and does not affect homeowners outside the zone. The City of Kenosha and Gail Procarione, City Clerk for the City of Kenosha, answered plaintiffs' complaint and filed a response opposing the motion for preliminary injunction. By letter dated August 31, 1992, Robert Selk, Assistant Attorney General for the State of Wisconsin, informed the court that the State would not intervene in the suit.

By order dated September 3, 1992, this court denied plaintiffs' request for preliminary injunctive relief. Noting that plaintiffs had demonstrated some likelihood of success on the merits, the court denied relief because the plaintiffs failed to meet the burden imposed on them by the Seventh Circuit's standard for granting injunctive relief. The court's order also contained scheduling provisions for dispositive motions so that the case could be resolved by November 3, 1992—election day. Pursuant to that order, plaintiffs filed a motion for summary judgment on October 1, 1992. Defendants signed a stipulation of facts to facilitate a resolution of this dispute. However, in light of the fact that the State of Wisconsin had declined to get involved in this case, defendants elected not to defend the Wisconsin statute.

### Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate whenever the "pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510. A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* at 248, 109 S.Ct. at 2510.

The moving party has the initial burden of showing that no material facts are in dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden can be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). To defeat a properly supported motion the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; Fed.R.Civ.P. 56(e). The opposing party cannot rely on general or conclusory factual allegations, but must show that a specific and material factual issue exists that must be decided at trial. *Valentine v. Joliet Township High School District*, 802 F.2d 981, 986 (7th Cir.1986).

The parties do not dispute that defendants, at all times, acted in good faith pursuant to the authority vested in them under section 12.03. Plaintiffs do not challenge defendants' actions; rather they challenge the constitutionality of the statute which authorizes such actions. The record does not show any material facts in dispute. Thus, summary judgment may be granted if plaintiffs are entitled to judgment as a matter of law.

### B. Constitutional Standards

The First Amendment states: "Congress shall make no law ... abridging the freedom of speech ..." U.S. Const. amend. I. While the freedom of speech secured by the First Amendment is not absolute, it is "among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment ..." *Thornhill v. Alabama*, 310 U.S. 88, 95, 60 S.Ct. 736, 740, 84 L.Ed. 1093 (1940). Thus, whenever a state passes a law burdening freedom of speech, that law must be analyzed under the strict scrutiny test. John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 11.7 (4th ed. 1991).

Strict scrutiny requires the State to show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Burson v. Freeman*, —— U.S. ——, ——, 112 S.Ct. 1846, 1851, 119 L.Ed.2d 5, 14 (1992); *Perry Educ. Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). Even political expression—which lies at the core of First Amendment values, is subject to government regulation provided the statute regulating such expression can withstand strict scrutiny. *Buckley v. Valeo*, 424 U.S. 1, 39, 44–45, 96 S.Ct. 612, 644, 646–647, 46 L.Ed.2d 659 (1976); *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968).

### C. Application

The Wisconsin statute challenged by plaintiffs provides, in pertinent part, that "[n]o person may engage in electioneering during polling hours on election day within 500 feet of an entrance to a building containing a polling place." Wis.Stat.Ann. § 12.03(2) (West 1986). For purposes of this section, "electioneering" is defined as "any activity which is intended to influence voting at an election." *Id.* § 12.03(4).

Section 12.03 clearly involves restriction of political speech—that category of speech to which "the First Amendment has its fullest and most urgent application," *Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989). Thus, it is a content-based restriction and can be upheld only if the State of Wisconsin has a compelling interest in regulating the political expression. Moreover, even if the state does have a compelling interest, the statute must be narrowly tailored to achieve that interest; the statute must not be overbroad and the legislature must have chosen the least restrictive means of regulation.

The Supreme Court consistently has found that states have a compelling interest in maintaining the integrity of the voting place, preventing voter intimidation and confusion, and preventing election fraud.

*Burson v. Freeman,* —— U.S. at ——, 112 S.Ct. at 1851–1852, 119 L.Ed.2d at 14–15; *Eu,* 489 U.S. at 228, 231, 109 S.Ct. at 1024; *Anderson v. Celebrezze,* 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983). Thus, the crucial inquiry is whether section 12.03(2) is narrowly tailored to achieve that interest.

In *Burson v. Freeman,* the Supreme Court specifically addressed this issue. In that case, plaintiff challenged a Tennessee law which prohibited the display or distribution of campaign materials within 100 feet of the entrance to a polling place, arguing that the statute violated the First and Fourteenth Amendments.[1] Five justices voted to uphold the law, however, the Court was sharply divided, and was unable to reach a majority decision. Justice Blackmun, joined by Justices Rehnquist, White and Kennedy, delivered a judgment of the Court, which applied the compelling interest test. Under the test, the plurality found that the statute was narrowly tailored, concluding that the 100 foot boundary did not constitute "an unconstitutional compromise."[2] *Id.* —— U.S. at ——, 112 S.Ct. at 1858, 119 L.Ed.2d at 22. In so doing, the plurality noted that the Court "has not employed any 'litmus-paper test' that will separate valid from invalid restrictions ... [but] it is sufficient to say that Tennessee is on the constitutional side of that line." *Id.*

In response to plaintiff's argument that statute was not narrowly tailored because

the zone created under the statute was too large, Justice Blackmun wrote:

> We do not think that the minor geographic limitation prescribed by [the Tennessee statute] constitutes such a significant impingement. Thus, we simply do not view the question whether the 100–foot boundary line could be somewhat tighter as a question of 'constitutional dimension.' (citations omitted). Reducing the boundary to 25 feet ... is a difference only in degree, not a less restrictive alternative in kind.

*Id.* —— U.S. at ——, 112 S.Ct. at 1857, 119 L.Ed.2d at 21 (citing *Buckley v. Valeo,* 424 U.S. at 30, 96 S.Ct. at 640). This language might suggest that the plurality would have no problem with even a 500–foot boundary as prescribed by section 12.03(2). However, Justice Blackmun recognized that "[a]t some measurable distance from the polls, of course, governmental regulation of vote solicitation could effectively become an impermissible burden akin to the statute struck down in *Mills v. Alabama.*"[3] *Burson,* —— U.S. at —— – ——, 112 S.Ct. at 1857–1858, 119 L.Ed.2d at 21–22.

Justice Stevens, in a dissenting opinion in which Justices O'Connor and Souter joined, concluded that the Tennessee statute was content-based in that it prohibited "classical political expression," and therefore agreed with the plurality's use of the compelling interest test. *Id.* —— U.S. at ——, 112 S.Ct. at 1861, 119 L.Ed.2d at 26. How-

---

1. Except for the shorter radius of the "campaign-free zone" prescribed by the Tennessee statute, its provisions are similar to those contained in Section 12.03.

2. Justices Kennedy and Scalia, in separate concurring opinions, criticized the plurality's use of the compelling interest test, but voted to uphold the statute nonetheless. Justice Kennedy voted to uphold the law because Tennessee was acting "to protect the integrity of the polling place where citizens exercise the right to vote ... one of the most fundamental and cherished liberties in our democratic system of government," and was "not using this justification to suppress legitimate expression." *Burson,* —— U.S. at ——, 112 S.Ct. at 1859, 119 L.Ed.2d at 24. Justice Scalia voted to uphold the statute because it "is a reasonable, viewpoint-neutral regulation of a non-public forum." *Id.*

3. In *Mills v. Alabama,* the Supreme Court held unconstitutional an Alabama statute which made it a crime "for the editor of a daily newspaper to write and publish an editorial *on election day* urging people to vote a certain way on issues submitted to them." 384 U.S. 214, 215, 86 S.Ct. 1434, 1435, 16 L.Ed.2d 484 (1966). The language of the Alabama statute was essentially the same as that in Section 12.03, however, rather than specifying boundary lines, the Alabama statute flatly prohibited "electioneering" anywhere on election day.

Significantly, in striking the statute, the Court noted that "this question in no way involves the extent of a State's power to regulate conduct in and around polls in order to maintain peace, order and decorum there." *Id.* at 218, 86 S.Ct. at 1436.

ever, the dissent found that the State failed to meet the "heavy burden of justification" imposed on it by that test (i.e. the State failed to show that the statute was narrowly tailored). *Id.* — U.S. at —, 112 S.Ct. at 1865, 119 L.Ed.2d at 32.

Significantly, in this dissenting opinion, Justices Stevens, O'Connor and Souter indicated that they would find section 12.-03(2)—the very statute at issue in this case, unconstitutional:

> The Tennessee zone encompasses at least 30,000 square feet around each polling place; in some states, **such as ... Wisconsin**, the radius of the restricted zone is 500 feet—silencing an area of over 750,000 square feet. Even under the most sanguine scenario of participatory democracy, it is difficult to imagine voter turnout so complete as to require the clearing of hundreds of thousands of square feet simply to ensure that the path to the polling place door remains opens [sic] and that the curtain that protects the secrecy of the ballot box remains closed.

*Id.* — U.S. at —, 112 S.Ct. at 1861, 119 L.Ed.2d at 26 (emphasis added). Noting that the statute bars the "simple 'display of campaign posters,'" Justice Stevens wrote: "[t]he notion that such sweeping restrictions on speech are necessary to maintain the freedom to vote and the integrity of the ballot box borders on the absurd." *Id.* — U.S. at —, 112 S.Ct. at 1862, 119 L.Ed.2d at 27.

Perhaps more importantly, there are significant differences between section 12.-03(2) and the Tennessee statute challenged in *Burson* which might cause even the plurality to find section 12.03(2) unconstitutional. First, the boundary prescribed by Section 12.03(2) is significantly larger than that prescribed by the Tennessee statute. As the dissenters noted, the Tennessee statute created a 30,000 square fee campaign-free zone. Section 12.03 creates a campaign-free zone of over 750,000 square feet! Furthermore, while the Tennessee zone encompassed some sidewalks and streets—a fact which gave the justices pause as a regulation of a public forum,

section 12.03(2) encompasses—not only sidewalks and streets, but private residences as well. This is not a case where the legislature is regulating expression in a public forum; section 12.03, with its sweeping zone of protection, prohibits individual homeowners from expressing their political views *on their own property.*

■ For these reasons, and because the State of Wisconsin, in electing not to defend section 12.03, has not justified the substantial infringement on free speech, the court finds that section 12.03(2) is unconstitutional. Although the state has a compelling interest in maintaining the integrity of the election process and keeping voters free from intimidation and harassment, the State's interest simply does not justify the sweeping prohibitions contained in section 12.03(2). In sum, section 12.03(2) is not narrowly tailored to achieve the State's interest.

### Conclusion

Because there are no genuine issues of material fact, summary judgment is appropriate in this case. Moreover, for the reasons set forth above, the court finds that Wisconsin Statutes section 12.03(2) is unconstitutional in that it creates an impermissible infringement on free speech which has not been justified by the State of Wisconsin. Accordingly, the court concludes that plaintiffs are entitled to judgment as a matter of law.

IT IS ORDERED that plaintiffs' motion for summary judgment be and the same is hereby GRANTED.

The clerk is directed to enter judgment accordingly.