United States Court of Appeals,

Fifth Circuit.

No. 92-3900.

Theodor A. SCHIRMER, et al., Plaintiffs,

Shelley E. Corrington, Individually, et al., Plaintiffs-Appellants,

v.

Edwin W. EDWARDS, Governor of the State of Louisiana, and in his official capacity, et al.,
Defendants-Appellees.

Sept. 17, 1993.

Appeal from the United States District Court for the Middle District of Louisiana.

Before POLITZ, Chief Judge, and REYNALDO G. GARZA, and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellants appeal the district court's adverse judgment, which denied their constitutional challenge to Louisiana's campaign-free zone codified at LSA-R.S. 18:1462. Persuaded that Louisiana has a compelling interest in creating a campaign-free zone, and that the statute is narrowly drawn to achieve that end we AFFIRM.

FACTS

The plaintiffs-appellants are a group of Louisiana voters, who are members of the political organization called Recall '92, Inc. The principal objective of the group is to recall Louisiana Governor Edwin Edwards. The recall procedure, which is codified at LSA-R.S. 18:1300.1 et seq., requires signatures on a recall petition of not less than one-third of the total electors of the voting area, collected and submitted within a 180-day period.[1]

In order to further their effort, the appellants seek to establish that LSA-R.S. 18:1462 is unconstitutional.[2] Section 1462 as interpreted by the Louisiana Supreme Court:

---

[1] In essence, this would require about 750,000 signatures.

[2] The current version of Section 1462 reads as follows:

§ 1462. Acts prohibited on election day; electioneering; exception; enforcement; penalty

[P]ro scribes on election day, outside of the polling place itself but within a radius of six hundred feet from the entrance thereto, all solicitation of signatures for a recall petition that is not on the ballot that is to be voted on at the election for which the polling place is open. [Section 1462] proscribes in the polling place or said six hundred foot radius all wearing of clothing or buttons bearing visible words or symbols supportive of such recall.[3]

Prior to the November 3, 1992 election, appellants brought suit to enjoin the application of Section 1462 so that they would be able to obtain the required amount of signatures within the 180-day window. The appellants sought to circulate petitions, obtain signatures, wear buttons, display paraphernalia, and pass out other materials to support their cause at the November 3, 1992 election. There was nothing on the ballot pertaining to the recall effort.

On October 3, 1992, Theodor Schirmer was not permitted to vote with a Recall 92 T-shirt at one location, and then at another location was arrested for violating Section 1462 by attempting to solicit signatures on a recall petition. Shelley Corrington was also not permitted to vote because

---

A. Except as otherwise specifically provided by law, it shall be unlawful for any person, between the hours of 6:00 a.m. and 9:00 p.m., to perform or cause to be performed any of the following acts within any polling place being used in an election on election day or within any place wherein absentee voting is being conducted, or within a radius of six hundred feet of the entrance to any polling place being used in an election on election day or any place wherein absentee voting is being conducted:

     (1) To solicit in any manner or by any means whatsoever any other person to vote for or against any candidate or proposition being voted on in such election.

     (2) To remain within any such polling place or place wherein absentee voting is being conducted or within a radius of six hundred feet of the entrance of any such polling place, except when exercising the right to vote, after having been directed, in writing, by an election commissioner or law enforcement officer to leave the premises or area of a polling place or after having been directed, in writing, by a registrar or deputy registrar to leave the place wherein absentee voting is being conducted.

     (3) To hand out, place, or display campaign cards, pictures, or other campaign literature of any kind or description whatsoever.

     (4) To place or display political signs, pictures, or other forms of political advertising.

LSA-R.S. § 1462.

[3]The statement on the application of Section 1462 was issued by the Louisiana Supreme Court in response to the prior panel's certification of the question while the temporary restraining order pending appeal was considered and granted.

she was wearing a T-shirt advertising the recall effort. There were numerous other plaintiffs, who had similar experiences in forwarding the recall drive.

## PROCEDURE

The plaintiffs brought suit in the Middle District of Louisiana pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) seeking declaratory and injunctive relief against the application of the campaign-free zone. On October 19 and 20, 1992, the district court conducted a two-day trial to determine the constitutionality of LSA-R.S. § 18:1462.

The plaintiffs launched three grounds of attack on Section 1462: (i) the statute placed an excessive burden on their First Amendment rights because it proscribed campaign activity within a 600-foot radius around polling places; (ii) even if constitutional, Section 1462 only applied to issues or persons on the ballot; or alternatively (iii) the statute was enforced in a discriminatory and content-rooted manner in derogation of the plaintiffs' First Amendment rights.[4]

The district court, relying principally on *Burson v. Freeman,* --- U.S. ----, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), found that the statute was constitutional. The court determined that Section 1462 created a constitutional campaign-free zone around polling areas, and applied to both issues and parties whether or not they were on the ballot.

The plaintiffs appealed to the Fifth Circuit, and in the interim sought temporary injunctive relief pending appeal. The district court denied plaintiffs' application for a temporary restraining order; however, an earlier panel of this court granted plaintiffs' motion for an injunction pending appeal. *See Schirmer v. Edwards,* No. 92-3900 (5th Cir. Oct. 29, 1992). At long last, we are now able to render a final decision on appellant's claims.

## DISCUSSION

The appellants assert on appeal that Section 1462 is invalid under the First and Fourteenth amendments. They contend: (i) Louisiana does not have a compelling interest in providing for a 600-foot campaign-free zone around its polls; (ii) even if the state has a compelling interest in a

---

[4]The district court declined to rule on the plaintiffs' discriminatory application claims—persuaded that the issue would be better raised as a defense to a state court criminal action. The appellants combine this argument with their void for vagueness defense.

campaign-free zone, the statute is not narrowly tailored to achieve that interest because 600 feet is excessive;  (iii) the statute is facially invalid because its content restriction is substantially overbroad;  and (iv) the statute is void for vagueness.

We find that:  (i) Louisiana has a compelling interest in maintaining campaign-free zones on election day;  (ii) the statute is narrowly tailored to achieve that compelling interest;  (iii) the statute is not substantially overbroad;  and (iv) we need not address the void-for-vagueness argument. Therefore, the district court's decision is AFFIRMED.

*i. Does Louisiana have a Compelling Interest in Maintaining a Campaign-Free Zone around its Polls During Elections?*

Section 1462 posits the First Amendment's guarantee of the right to free speech against the state's attempt to secure its citizens' right to vote in an environment free from intimidation, harassment, confusion, obstruction, and undue influence.  This conflict of First Amendment rights necessarily requires a compromise between the two.  The Supreme Court addressed this issue head on last term in *Burson v. Freeman,* --- U.S. ----, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

In *Burson,* the court found a Tennessee Statute that proscribed campaign activity within a 100-foot radius of its polls on election day to be constitutional.  The court found that the statute implicated three First Amendment concerns:  (i) regulation of political speech;  (ii) regulation of speech in a public forum;  and (iii) regulation of speech based on content.  The *Burson* plurality[5] found that a content-based restriction on political speech in a public forum is subject to strict scrutiny.[6]  Strict scrutiny requires Louisiana to show that Section 1462 is narrowly tailored to achieve a compelling governmental interest.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S.

---

[5]Justice Blackmun wrote the plurality opinion that Chief Justice Rehnquist, and Justices White and Kennedy joined.  Justice Kennedy filed a concurring opinion.  Justice Scalia filed an opinion concurring in the judgment.  Justice Stevens wrote the dissent, which was joined by Justices O'Connor and Souter.  Justice Thomas took no part in the decision.

[6]Justice Scalia concurred in the judgment of the court.  In doing so, he concluded that the regulation at issue was a reasonable viewpoint-neutral regulation of speech in a non-public forum. Justice Scalia concluded that the areas adjacent to a polling forum on or near election day do not constitute a *traditional* public forum and, thus, the statute should not be subjected to the strict scrutiny standard.  *See Burson,* --- U.S. at ----, 112 S.Ct. at 1859-61 (Scalia, J., concurring) (*citing Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976)).

37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

Undeniably, both the Tennessee statute and Section 1462 are content-based restrictions. Each singles out and sanctions public discourse on politics—an area deep within the confines of the First Amendment. *See, e.g., Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 223, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989) (citations omitted) ("the First Amendment has its fullest and most urgent application to [political] speech"). Clearly, Section 1462 does not apply to any other type of speech.[7] Consequently, the statute is not a content-neutral time, place, or manner restriction and, thus, is subject to strict scrutiny.

Moreover, the statute must still be constitutionally gauged under the strict scrutiny standard even though it is viewpoint-neutral. *See, e.g., Boos v. Barry,* 485 U.S. 312, 319, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988) (viewpoint-neutral statute that prohibited use of signs within 500 feet of foreign embassies content-based); *see also Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980) ("[t]he First Amendment's hostility to content-based restrictions extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion on an entire topic").

In *Burson,* the state of Tennessee proffered two grounds upon which to support its compelling interest in a campaign-free zone: (i) the protection of its citizens' right to vote freely for the candidate of their choice; and (ii) the protection of the right to vote in an election that is conducted with integrity and reliability. The Supreme Court agreed that these interests were compelling, but the court noted that "[t]o survive strict scrutiny ... a state must do more, ... it must demonstrate that the law is necessary to serve the asserted interest." *Id.,* --- U.S. at ----, 112 S.Ct. at 1852.

The court traced the longstanding history of election problems that fostered the need for reform, which led to the Tennessee statute in *Burson,* as well as Section 1462. *See id.,* --- U.S. at ----, 112 S.Ct. at 1852-55. The court noted that the two-fold problem that these regulations were enacted to cure was: (i) voter intimidation; and (ii) election fraud. *Id.,* --- U.S. at ----, 112 S.Ct. at

---

[7]The court below noted that it would be permissible to advocate on the freedom of choice or even to sell Tupperware in the campaign-free zone.

1855. Finally, the plurality concluded that "wide-spread and time-tested consensus demonstrates that some restricted zone is necessary in order to serve the States' compelling interest in preventing voter intimidation and election fraud." *Id.*[8]

Louisiana State Representative Charles Lancaster, who authored the 1980 amendments to Section 1462, testified before the court below. The 1980 amendments expanded the campaign-free zone from 300 feet to 600 feet. Representative Lancaster testified that the statute primarily sought to guard against: (i) voter intimidation; (ii) voter harassment; and (iii) to provide unobstructed access to the polls. Lancaster testified that the problem largely emanated from poll workers, who bombarded voters in and around the polls. Apparently, it was common practice to use poll workers to inundate voters just prior to their entry to the polls. The legislature felt compelled to remedy the situation statutorily. The intent of the statute was to encourage voter participation. Under the statutorily created campaign-free zone, voters are free to vote without passing through a gauntlet of poll workers.

We conclude that Louisiana undoubtedly has a compelling interest to protect its citizens' right to vote. *Burson* reaffirmed that states have a compelling interest in protecting the right to vote—"a right at the heart of our democracy." *Burson,* --- U.S. at ----, 112 S.Ct. at 1851; *see also Anderson v. Celebrezze,* 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983).

*ii. Is the 600-Foot Limitation in Section 1462 Narrowly Tailored to Protect Louisiana's Compelling Interest?*

Given the fact that Louisiana has a compelling interest in establishing a campaign-free zone, the question then becomes whether 600 feet is a valid limitation. Interestingly, Louisiana's statute is the second largest limitation in the country. Hawaii's 1,000-foot campaign-free zone is the largest in the country. *See* Haw.Rev.Stat. §§ 11-132 & 19-6(7).[9]

It is difficult to demarcate the point where the state's compelling interest in a campaign-free

---

[8]The dissent interpreted the purpose of the statute somewhat differently reasoning that the statute served: (i) to protect orderly access to the polls; and (ii) to prevent last-minute campaigning. *Id.,* --- U.S. at ----, 112 S.Ct. at 1861 (Stevens, J., dissenting).

[9]Texas prohibits campaigning with a car microphone within 1,000 feet of the polling place on election day. *See* Tex.Elec.Code Ann. § 61.004.

zone ceases and beyond which any content-based infringement becomes unconstitutional. The *Burson* court recognized this when it held "that *some* restricted zone around the voting area is necessary to secure the State's compelling interest." *Burson,* --- U.S. at ----, 112 S.Ct. at 1856 (emphasis in original). Justice Blackmun tempered this statement when he reasoned "at some measurable distance from the polls ... governmental regulation ... could effectively become an impermissible burden akin to the statute struck down in *Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)."[10]

The appellees contend that the state is not required to prove that the 600-foot zone is perfectly tailored, as long as it does not *significantly impinge* on constitutionally protected rights.[11] The *Burson* plurality concluded that Tennessee's campaign-free zone represented only a "minor geographic limitation" that did not significantly impinge upon constitutionally protected rights. *Burson,* --- U.S. at ----, 112 S.Ct. at 1857. Justice Blackmun explained "we simply do not view the question whether the 100-foot boundary line could be somewhat tighter as a matter of "*constitutional dimension. Munro v. Socialist Workers Party,* 479 U.S. 189, 197 [107 S.Ct. 533, 538, 93 L.Ed.2d 499] (1986). Reducing the boundary [line] *is a difference only in degree, not a less restrictive alternative in kind.*" *Burson,* --- U.S. at ----, 112 S.Ct. at 1857 (emphasis added) (*citing Buckley v. Valeo,* 424 U.S. 1, 30, 96 S.Ct. 612, 640, 46 L.Ed.2d 659 (1976)). This statement reflects the

---

[10]In *Mills,* the Supreme Court struck down a statute that made it a crime for a newspaper editor to publish political editorials on election day. *Mills,* 384 U.S. at 220, 86 S.Ct. at 1437. Interestingly, the *Mills* opinion distinguished the present situation when it admonished "[w]e should point out at once that this question in no way involves the extent of a state's power to regulate conduct in and around the polls in order to maintain peace, order, and decorum there." *Id.* at 218, 86 S.Ct. at 1436-37.

[11]The genesis of the "significantly impinge" language found in the *Burson* plurality's opinion came from *Munro,* 479 U.S. at 196, 107 S.Ct. at 537.

> [R]equiring proof that a 100-foot boundary is perfectly tailored to deal with voter intimidation and election fraud "would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action. Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight, rather than reactively, provided that the response is reasonable and does not *significantly impinge* on constitutional rights.'

*Burson,* --- U.S. at ----, 112 S.Ct. at 1857 (emphasis in original) (*quoting Munro,* 479 U.S. at 195-96, 107 S.Ct. at 537-38).

difficulty that lies in determining the exact point at which to draw the line, and it suggests that the plurality would have supported a 600-foot limitation.

The appellants point to the numerous exit-polling cases that have invalidated much smaller restrictions around polling areas. For example, in *Daily Herald Co. v. Munro,* 838 F.2d 380 (9th Cir.1988), the Ninth Circuit held a 300-foot restriction on exit-polling to be unconstitutional on its face. *Id.* at 389 (the content-based statute was not narrowly tailored). *Daily Herald* is representative of many cases holding that much smaller limitations do not survive strict scrutiny in the exit polling context. *See, e.g., National Broadcasting Co., Inc., v. Cleland,* 697 F.Supp. 1204, 1215 (N.D.Ga.1988) (holding 150-foot exit-polling limitation not narrowly drawn, but construed to be constitutional up to 25 feet). We reject the application of the exit-polling cases to the present context because the underlying state interests differ in each case. While there is no evidence of widespread voter harassment or intimidation by exit-pollers, there is evidence that poll workers do create these problems. Consequently, the state's compelling interest is called to greater heights in creating a campaign-free zone.

Further, Representative Lancaster testified that the 300-foot limitation, which preceded the 1980 amendments, did not prevent the continued hiring of poll workers. The 600-foot limitation was created to dissuade politicians from hiring poll workers. Poll workers were one of the principal causes of voter intimidation and harassment that was perceived to be causing low voter turnout. Further, according to Lancaster, the 600-foot limitation has served its purpose and poll workers are no longer used.

The Louisiana legislature tried to utilize a 300-foot campaign-free zone to protect its citizens' rights to vote. The legislature, thus, found a less restrictive alternative inadequate. Only after the 300-foot limitation failed to remedy the poll worker problem did the legislature take the next step to 600 feet. Therefore, we find that Section 1462's geographic limitation is narrowly tailored to achieve a compelling governmental interest.[12]

---

[12]While we have found that Louisiana's campaign-free zone is narrowly tailored, we note that in *Clean-Up '84 v. Heinrich,* 759 F.2d 1511, 1514 (11th Cir.1985), the Eleventh Circuit held that a 100-yard (300-foot) campaign-free zone was unconstitutionally overbroad. *Id.* (cited by the

*iii. Is Section 1462 Substantially Overbroad?*

The appellants next contend that Section 1462 is overbroad because it applies to: (1) the political speech of individuals not on the ballot ("non-ballot political speech"); and (2) buttons and T-shirts ("passive political speech").[13]

The appellants argue that Louisiana does not have a compelling interest in banning non-ballot political activity nor passive political speech around the polls. Appellees offer two defenses with regard to Section 1462's total ban on political speech: (i) if only ballot-related campaigning were proscribed voter intimidation and harassment problems would still exist because of enforcement and security problems; and (ii) solicitation for a recall petition has a greater disruptive potential than all other political speech.

The first argument, that suppression of ballot-related activity alone is insufficient, is rooted in the argument that ballot campaigners could achieve their ends by posing as non-ballot campaigners in order to gain access to the confines of the forbidden 600-foot radius. Representative Lancaster and Representative Accardo testified that an across-the-board ban on politicking was necessary to protect voters' rights because any exceptions to the total ban on political speech would necessarily create the need for on the spot enforcement.

Lancaster and Accardo stated that to allow any politicking in the campaign-free zone would open the door to subterfuge. If some people were allowed to engage in political speech in the campaign-free zone it would create two problems: (i) on-the-spot enforcement decisions about what

_____

*Burson* dissent).

Further, the only post-*Burson* case to directly address the campaign-free zone issue appears to be *Calchera v. Procarione,* 805 F.Supp. 716 (E.D.Wisc.1992). The *Calchera* decision focused on the plurality opinion in *Burson* and noted the opinion's statement that at some point a campaign-free zone would be over-inclusive. The court held that the statute's 500-foot proscription was overbroad, and noted that it imposed a much greater infringement on the First Amendment than the 100-foot limitation addressed in *Burson. See Calchera,* 805 F.Supp. at 719-20. However, the Wisconsin statute in *Calchera* was found to prohibit homeowners from expressing their political views on their own property. The district court grasped on this factor to distinguish *Burson. See id.* at 720. There is no evidence in the record before us that the Louisiana statute is applied similarly.

[13]We will use the term "passive political speech" to refer to buttons and t-shirts.

was proscribed by the statute; and (ii) increased security needed to weed out those engaged in ballot related speech.

To avoid this morass the legislature decided that a total ban was necessary. They reasoned that if they had to police the campaign-free zone to the extent necessary to weed out the disguised poll workers, then voters would still be intimidated and harassed. The heightened security itself would no doubt result in voter intimidation—the evil they sought to cure. Further, problems with on the spot decision making and varying degrees of enforcement would result in uneven application of the statute. Consequently, Section 1462 is not overbroad.

Justice Stevens, in his dissent in *Burson,* made the only known reference with regard to proscribing non-ballot campaigning around polling areas. Justice Stevens noted that the Tennessee statute did not apply to "political debate and solicitation concerning issues or candidates *not on the day's ballot."* *Burson,* --- U.S. at ----, 112 S.Ct. at 1864 (Stevens, J., dissenting) (emphasis added). Stevens also noted that the Tennessee statute did not prohibit exit polling, leaflets, posters or buttons. He reasoned that these factors "severely undercut[ ] the credibility of [Tennessee's] purported law-and-order justification." Id. (Stevens, J., dissenting). These statements suggest that Justice Stevens would be more comfortable with an across the board ban on politicking in the campaign-free zone based on the same logic forwarded by Representatives Lancaster and Accardo. In any event, the issue of proscribing non-ballot campaigning was not an issue in *Burson* and appears to be an issue of first impression.

The appellees further argue that there is an important distinction between a recall petition and other campaign-related activity. In all other campaign activity the voter is free to exercise his rights in a secret ballot booth after having weighed and observed all campaigning activity whether it be far or near the polling venue. However, in the recall petition context, even if there is no recall on the ballot, voters must either sign the petition on the spot or the parties seeking their signature will immediately know that they have been rejected. The appellees contend that this renders the state's compelling interest to protect the voter to be even greater when weighed against the First Amendment rights of those seeking to forward the recall effort.

This argument is forceful and it is true that this distinction is meaningful. However, Section 1462 does not target only recall petitions nor does it even mention them. Further, there is no evidence that the legislature considered the 600-foot limit with regard to recall petitions in 1980 when it was amended.[14]

Accordingly, we find that a total ban on politicking within the campaign-free zone is not overbroad. In fact, the total ban in the present context is the most defensible position. The state has a compelling interest in protecting its voters and the proffered reasons given by the legislature demonstrate a reasonable compromise to the problems that necessitated the campaign-free zone in the beginning.

*iv. Is Section 1462 Void For Vagueness?*

The appellants challenge Section 1462 on vagueness grounds contending that it is void because it is subject to discriminatory enforcement and fails to provide fair notice. The district court found that this issue would be better suited as a defense to a criminal prosecution. The *Burson* court treated this defense similarly when it stated "[i]n any event, these arguments are "as applied" challenges that should be made by an individual prosecuted for such conduct." *Burson,* --- U.S. at ---- n. 13, 112 S.Ct. at 1857 n. 13.

In light of our prior panel's certification to the Louisiana Supreme Court with regard to the statute's application to non-ballot matters it is clear now that the statute applies to non-ballot matters. However, there was some confusion created by some contrary attorney general opinions issued previously. In any event, the appellants do not appear to be in a position to assert this argument at this time.

## CONCLUSION

Louisiana has a compelling interest in establishing a campaign-free zone. The 600-foot limitation is narrowly drawn and not an excessive infringement on the First Amendment. Thus, the geographical limitation survives strict scrutiny. Moreover, the statute creates a total ban on

---

[14]Since the advent of this case Louisiana has enacted a statute that expressly creates a campaign-free zone applicable only to recall petitions. LSA-R.S. § 18:1300.6. We express no opinion as to the constitutionality of Section 1300.6.

politicking within the zone. The need for a total ban is compelling and Section 1462 is not overbroad. Legislatures must necessarily compromise between two competing First Amendment interests in creating a campaign-free zone. Louisiana's zone has evolved over time and at present represents a constitutional compromise. Further, the appellants' void for vagueness argument is better left to another day. Therefore, the judgment of the district court is AFFIRMED.