The Honorable Jim Keet State Senator P.O. Box 23603 Little Rock, Arkansas 72221-3603
Dear Senator Keet:
This is in response to your request for an opinion on whether it is lawful to conduct an election at a polling place when it is known that private property located within the "one-hundred foot limitation" will be used to post political signs.
Your question assumes that such signs will be posted on private property and that they may not be removed by law enforcement officials enforcing the limitation to which you refer. You therefore ask whether it is lawful to conduct an election at such a polling place. It is my opinion, however, that it is unlawful to post political signs on election day on private property which is within the one-hundred foot limitation. It is therefore unnecessary to address your stated question of whether it is lawful to conduct the election at a polling place with such signs posted.
The one-hundred foot limitation to which you refer is codified at A.C.A. § 7-1-103(9) (Cum. Supp. 1991), which provides as follows:
 No officer of election shall do any electioneering on any election day. No person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or do any electioneering of any kind whatsoever within one hundred feet (100') of any polling place on election day.
The term "electioneering" is not defined by the statute. As stated in Op. Att'y Gen. 88-350, however, Webster's Dictionary defines "electioneer" as meaning "to take an active part in an election; to work for the election of a candidate or party."Webster's Seventh New Collegiate Dictionary (7th ed. 1972 at 266). In addition, it was stated in Op. Att'y Gen. 78-77 that the term electioneering as used in the statute at issue herein, "refers to espousing the cause of a candidate or issue on the day of election." The statute prohibits electioneering "of any kind whatsoever," and it appears that at least some courts have considered the posting of political signs on private property to be "electioneering." Cf., e.g., Chachera v. Procarione,805 F.Supp. 716 (E.D. Wis. 1992).
The constitutionality of this statute was addressed in Op. Att'y Gen. 91-337, with regard specifically to the prohibition against the collecting of signatures on initiative petitions within one-hundred feet of a polling place. The opinion concluded that the statute was constitutionally suspect under the weight of existing federal case law, but noted that the result might be different if the United States Supreme Court handed down a contrary decision in a case then pending before it. That decision is now the controlling precedent on the issue. In Burson v.Freeman, 504 U.S., 119 L Ed 2d 5, 112 S.Ct 1846 (1992), the United States Supreme Court[1] upheld, against a First Amendment "free speech" challenge, a Tennessee statute which enacted a one-hundred foot election day "campaign free zone" around polling places which prohibited the display or distribution of campaign materials or solicitation of votes on election day. Although it was not discussed or even noted by the Court, the Tennessee statute did not exclude private property from its ambit. A plurality of the court found, although the statute regulated speech based upon its content (political speech only) and was therefore subject to the highest level of scrutiny, that the governmental interest in preserving the sanctity of elections was compelling enough to outweigh the free speech rights at issue. The plurality held that the statute was narrowly tailored enough to meet this high level of scrutiny, noting that the Court "has not employed any `litmus-paper' test that will separate valid from invalid restriction . . . [but] it is sufficient to say that Tennessee is on the constitutional side of that line." 112 S. Ct. at 1858.
As noted above, however, there was no discussion of the fact that the one-hundred foot Tennessee limitation could conceivably include private property. It is unclear, therefore, whether this aspect of the Tennessee statute would have also been specifically upheld by the United States Supreme Court. One post-Burson
federal case addresses this issue. In Calchera v. Procarione,supra, a Wisconsin statute which prohibited "electioneering" within five-hundred feet of the polling place was at issue. The two plaintiffs resided across the street from a polling place, and posted political signs in their front yards on election day. Officials from the City Clerk's office ordered the signs removed. One sign was removed, and the other was replaced within the yard at a distance of five hundred and one feet from the polling place. The district court held that the statute was content based and thus could only be upheld if the State had a compelling interest in regulating the political expression, and if the restriction was narrowly tailored to achieve that interest by the least restrictive means. Citing Burson, the court recognized the state's compelling interest in maintaining the integrity of the voting place, and thus declared the crucial inquiry to be whether the statute was narrowly tailored to achieve that interest. The statute was found not to meet this part of the test. The court noted that the five hundred foot limitation was significantly larger than the one upheld in Burson, and in fact, the dissenters in Burson, by way of example, cited to the very Wisconsin statute at issue, and indicated that it would certainly fail this part of the constitutional test. The district court in Calchera also noted that while the Tennessee zone encompassed some sidewalks and streets, the Wisconsin statute encompassed not only sidewalks and streets, but private residences as well. The court noted that Calchera was not a case where the state was regulating expression in a public forum, but where the sweep of the legislation at issue prohibited individual homeowners from expressing their political views on their own property. The statute was therefore struck down on First Amendment grounds, as not being narrowly tailored enough to achieve the State's interest.
We are thus left with a gap in the law between the Burson
decision (which although upholding a general one-hundred foot limitation, did not discuss private property) and Calchera
(which although discussing private property, strikes down a much broader geographic limitation). It is my opinion, however, that the United States Supreme Court would, if faced with this precise aspect of the statute, uphold a one-hundred foot limitation even with regard to private property. Although the court in Calchera
noted the distinction between the private property at issue therein and the public forums discussed in Burson, it applied the exact same constitutional test as the Court in Burson. TheCalchera court noted, with respect to the exercise of First Amendment rights on private property, that the test was whether the statute was sufficiently narrowly tailored (having found the compelling interest satisfied by virtue of Burson). The court found that it was not, based primarily upon the fact that the dissenters in Burson had made specific reference to the Wisconsin statute as an example of a geographically overbroad restriction, and upon the fact that the Attorney General of Wisconsin refused to intervene on behalf of the State and provide any justification for the restriction on free speech. Although the court did mention the special nature of expressing political views on one's own property, there was no indication that there was an absolute right to do so, regardless of even the most compelling governmental interest. This fact is buttressed by many federal decisions involving the restriction of First Amendment speech rights on private property. See e.g. Arlington CountyRepublican Committee v. Arlington County, 983 F.2d 587 (4th Cir. 1993) (striking down zoning ordinance which prohibited political signs on private property because not sufficiently narrowly tailored and noting that the county could not claim the compelling governmental interests at issue in Burson);Matthews v. Town of Needham, 764 F.2d 58 (1st Cir. 1985), (sign ordinance which prohibited posting of political signs on residential property, because content-based, must meet more exacting standard), and Baldwin v. Redwood City, 540 F.2d 1360
(9th Cir. 1976) (political sign prohibition on private property can only be upheld if the least restrictive means are used to further a significant government interest). In short, the constitutional test with regard to private property is the same test applied by the plurality in Burson. And Burson upheld a one-hundred foot limitation under this test.
It is therefore my opinion that A.C.A. § 7-1-103(9), Arkansas' one-hundred foot limitation, can be enforced against private property, and that political signs within this distance from a polling place on election day can properly be removed by enforcement officials. It is therefore unnecessary to address your stated question, which is whether it is lawful to conduct an election at a polling place where such signs appear.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Five justices voted to uphold the law, but the Court was sharply divided and was unable to reach a majority decision.