SHEPHERD, Circuit Judge,
concurring in part and dissenting in part.
I am pleased to concur with the majority’s decision holding (1) that the district court improperly considered matters outside the pleadings when dismissing the plaintiffs’ as-applied challenge and (2) that the plaintiffs have failed to state an equal protection claim. Because I respectfully disagree with the majoritys conclusion that the statutory restrictions, which ban the wearing of any political insignia, are reasonable in light of the need to maintain “peace, order, and decorum,” to “protect[ ] voters from confusion and undue influence,” and to “preserv[e] the integrity of its election process” in the polling place, I dissent from the affirmance of the district court’s dismissal of the plaintiffs’ claim that the statute is facially unconstitutional.
As the majority points out, for the speech restrictions in the polling place to survive constitutional scrutiny, the restrictions must be “viewpoint neutral and ‘reasonable in light of the purpose which the forum at issue serves.’ ” See supra at 1057 (quoting Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 49, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). “The state has a legitimate interest in ‘maintaining] peace, order and decorum’ in the polling place[,]” supra at 1057 (quoting Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)), “in ‘protecting voters from confusion and undue influence’ and ‘preserving the integrity of its election process.’” Supra at 1057 (quoting Burson v. Freeman, 504 U.S. 191, 199, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992)). I have no reservations about the majority’s conclusion that the statute is viewpoint neutral or that under Burson, it is constitutional to restrict speech inside the polling place about either political campaigns or issues that are on the ballot.[6]
I do not, however, agree that Burson may be applied to this statute to uphold the restrictions on the wearing of any political insignia in the polling place. The Tennessee statute at issue in Burson stated:
Within the appropriate boundary as established in subsection (a) [100 feet from the entrances], and the building in which the polling place is located, the display of campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes for or against any person or political party or position on a question are prohibited.
Id. at 193-94, 112 S.Ct. 1846 (emphasis added) (brackets in original) (quoting Tenn.Code Ann. § 2-7-lll(b) (Supp. 1991)). The Supreme Court noted that “[w]hether individuals may exercise then-free speech rights near polling places [under the Tennessee statute] depends entirely on whether their speech is related to a political campaign.” Id. at 197, 112 S.Ct. 1846 (emphasis added). In his dissent, Justice Stevens points out that the Tennessee statute “silences all campaign-related expression, but allows expression on any other subject: religious, artistic, commercial speech, even political debate and solicitation concerning issues or candi *1062 dates not on the day’s ballot.” Id,, at 223, 112 S.Ct. 1846 (Stevens, J., dissenting) (emphasis added).
The majority cites Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213 (11th Cir.2009) (per curiam) and Schirmer v. Edwards, 2 F.3d 117 (5th Cir.1993) as cases that applied Burson to uphold bans on material unrelated to any issue on the ballot. Supra at 1058. In both of those cases, however, the focus of the restrictions was the prevention of harassment of voters by exit solicitors seeking voter signatures on petitions as voters left the polls. See Browning, 572 F.3d at 1218-19; Schirmer, 2 F.3d at 122-23. I fail to see how this broad restriction, which prohibits a voter from wearing any political emblem, insignia, or slogan that is unrelated to an issue or candidate on the ballot, would rationally and reasonably help maintain the “peace, order, and decorum” of the polling place, “protect! ] voters from confusion or undue influence,” or “preserv[e] the integrity of [Minnesota’s] election process.”[7] Further, the record in this case is devoid of facts which demonstrate that any disruption of the “peace, order, and decorum” of the Minnesota election process has occurred by virtue of voters wearing a political emblem, insignia, or slogan that is unrelated to an issue or candidate on the ballot. Although the existence of a disruption is not necessary before the state imposes reasonable limitations on speech, had such facts existed, then perhaps I could agree that the restrictions are reasonable. Without further development of the record to reflect how these restrictions are reasonable limits on free speech which rationally relate to the state’s interest in maintaining order and preserving integrity at the polling place, I cannot join in the majority’s rejection of plaintiffs’ constitutional challenge on facial grounds.
Accordingly, I respectfully dissent from the majority’s affirmance of the district court’s dismissal of the plaintiffs’ facial challenge as to the third sentence of Minnesota Statute § 211B.11, subd. 1. I would remand to allow the record to be developed regarding plaintiffs’ facial challenge. Otherwise, I concur with the majority’s opinion.

. I also agree with the majority that EIW has waived any vagueness challenge by failing to brief it to this court. The district court likewise determined "that the Amended Complaint does not allege that Minnesota Statutes section 21 IB. 11 is void for vagueness.” (Order at 14-15.) It would appear, then, that plaintiffs are not barred from raising such a challenge in the future.

. For example, how does the wearing of a button or shirt bearing an American flag or the Star of David, which could arguably be considered political under this statute, disrupt the "peace, order, and decorum" of the voting booth? I do not accept that the presence of a passive and peaceful voter who happens to wear a shirt displaying, for example, the words "American Legion,” "Veterans of Foreign Wars,” "AFL-CIO,” "NRA,” "NAACP,” or the logo of one of these organizations (all of which have actively participated in the political process) somehow causes a disruption in the polling place or confuses or unduly influences voters.