# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #048

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **24th day of October, 2025** are as follows:

**BY Cole, J.:**

2025-O-00879

IN RE: JUDGE JENNIFER M. MEDLEY

SUSPENSION ORDERED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
Crain, J., concurs.
McCallum, J., concurs.

# SUPREME COURT OF LOUISIANA

## No. 2025-O-00879

## IN RE: JUDGE JENNIFER M. MEDLEY

Judiciary Commission of Louisiana

**COLE, J.**

This matter comes before the Court on the recommendation of the Judiciary Commission of Louisiana (the "Commission") that Judge Jennifer M. Medley of Orleans Parish be suspended from office without pay for thirty days and ordered to reimburse the Commission $5,494.81 in hard costs for violating Canons 7A(9), 7B(1), and 7B(3) of the Code of Judicial Conduct as well as La. Const. art. V, § 25(C) for activities that occurred during her campaign for judicial office. Having reviewed the record before us, we find the charges set forth in Counts II and IV are supported by clear and convincing evidence. We also find the Commission has failed to meet its burden of proof on Counts I and III and dismiss those charges. Respondent shall be suspended for thirty days without pay and reimburse the Commission one-half of its costs in the amount of $2,747.41.

## FACTS AND PROCEDURAL HISTORY

Following a hotly contested campaign against then-incumbent Judge Christopher Bruno, Judge Medley was elected to the Orleans Parish Civil District Court on November 3, 2020, and assumed office on January 1, 2021. She has served continuously since that time.[1] Following a referral of complaints from the Judicial Campaign Oversight Committee and the Office of Disciplinary Counsel, a media

---

[1] Judge Medley was previously admonished by the Commission on December 22, 2022, for holding an attorney in direct contempt of court without following proper procedures as required by law and for imposing a sentence for contempt not authorized by law. That incident occurred on April 19, 2022.

report, and a complaint filed by Judge Medley's opponent's attorney, on January 18, 2024, the Judiciary Commission issued a Notice of Hearing alleging that Judge Medley violated several provisions of the Code of Judicial Conduct in connection with her judicial campaign. The Commission alleged four counts of unethical conduct against Judge Medley, generally providing as follows:

> **Count I**: Judge Medley's campaign created a video advertisement involving the plaintiff in the matter of *Doe v. Lewis*, 2014-7067 (Civil District Court for the Parish of Orleans), a case allotted to Judge Bruno. Despite the plaintiff's allegation in the video that Judge Bruno was biased towards her, the Commission found the statements were false and misleading in violation of Canons 7A(9) and 7B(1) of the Code of Judicial Conduct and La. Const. art. V, § 25(C) of the Louisiana Constitution.

> **Count II:** Judge Medley's campaign created a video advertisement accusing Judge Bruno of being "called a judge by some and a deadbeat dad by others," refusing to pay child support for thirteen years, and refusing to provide his ex-wife with discovery regarding his income. Although Judge Bruno obtained a Temporary Restraining Order to stop Judge Medley from airing the ad, Judge Medley's campaign Facebook page repeated statements from the advertisement. The Commission found that Judge Medley's statements in this advertisement were false and/or misleading in violation of Canons 7A(9) and 7B(1), and 7B(3) of the Code of Judicial Conduct and La. Const. art. V, § 25(C) of the Louisiana Constitution.

> **Count III:** During her campaign for judicial office, Judge Medley obtained a loan in the amount of $100,000 from IV Capital, LLC (an LLC that is a non-bank/non-federally chartered depository institution owned by Sidney Torres, IV, an outspoken critic of Judge Bruno),[2] indicating the purpose of the loan was for home improvements. On the same date of the acquisition of the loan, Judge Medley personally loaned her campaign $85,000, and shortly thereafter she personally loaned her campaign $15,000. In the two months prior to obtaining the $100,000 loan, however, Judge Medley independently had less than 40% of that amount available in her bank accounts. These actions gave the appearance of attempting to circumvent campaign finance law[3]

---

[2]A political action committee (Voice of the People) and production company (SDT Productions) created the advertisements criticizing Judge Bruno and supporting Judge Medley. Voice of the People contracted with SDT Productions to create the advertisements, and Judge Medley engaged SDT Productions to produce the advertisements, which were paid for by her campaign.

[3]The Campaign Finance Disclosure Act, La. R.S. 18:1481 *et seq.*, is intended to "provide public disclosure of the financing of election campaigns and to regulate certain campaign practices" in recognition of the fact that "the effectiveness of representative government is dependent upon a knowledgeable electorate and the confidence of the electorate in their elected public officials." La. R.S. 18:1482. Loans to judicial campaigns or candidates in excess of the statutory limit on contributions and that are not from a state bank or federally chartered depository institution are

2

and/or exploiting a loophole in the law, thereby violating Canon 7(B)(1) of the Code of Judicial Conduct and La. Const. art. V, § 25(C) of the Louisiana Constitution.

**Count IV**: In connection with the production video in Count I, Judge Medley made two separate payments from her personal bank account via the Zelle application to the plaintiff in *Doe v. Lewis*: one for $700 on September 28, 2020, and another for $500 on October 28, 2020. Because Judge Medley stated these payments were intended to reimburse travel expenses incurred as a part of production of the campaign video, they were campaign expenditures that were required to have been reported on her campaign finance report pursuant to La. R.S. 18:1483(9)[4] and 18:1495.4-1495.5.[5] Judge Medley failed to list these payments as campaign expenditures and failed to properly record the payments as electronic funds transfers pursuant to La. R.S. 18:1495.2(D)(2). Thus, Judge Medley violated Canon 7(B(1) of the Code of Judicial Conduct and La. Const. art. V, § 25(C) of the Louisiana Constitution.

Judge Medley and the Office of Special Counsel ("OSC") entered into a stipulation of facts and jointly waived a hearing. The hearing officer, retired Judge H. Ward Fontenot, filed a report with the Commission containing proposed findings of fact and conclusions of law. After filing briefs in response to that report, Judge Medley appeared before the Commission in March 2025. On July 10, 2025, the Commission filed its recommendation in this Court, finding Judge Medley's conduct violated Canons 7A(9), 7B(1), and 7B(3)[6] of the Code of Judicial Conduct and La.

---

prohibited by La. R.S. 18:1505.2(H)(3)(c) and 18:1505.2(H)(6)(a). IV Capital, LLC is not a "state bank" of "federally chartered depository institution" as defined by statute.

[4]Before its recent amendment, La. R.S. 18:1483(9) provided the definition of "Expenditure" to mean a "purchase, payment, advance, deposit, or gift, of money or anything of value made for the purpose of supporting, opposing, or otherwise influencing the nomination or election of a person to public office, for the purpose of supporting or opposing a proposition or question submitted to the voters, or for the purpose of supporting or opposing the recall of a public officer, whether made before or after the election."

[5]The current version of La. R.S. 18:1495.5 (B)(11) provides that each campaign finance report shall contain "[t]he total of all expenditures made by the candidate during the reporting period."

[6]Canon 7A(9) provides that a judge or judicial candidate shall not knowingly make, or cause to be made, a false statement concerning the identity, qualifications, present position, or other fact concerning the candidate or an opponent. Canon 7B(1) states that a judge or judicial candidate shall maintain the dignity appropriate to the judicial office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary. Canon 7B(3) provides that a judge or judicial candidate shall take reasonable measures to ensure that other persons do not undertake, on behalf of the judge or judicial candidate, any activities prohibited under this Canon.

3

Const. art. V, § 25(C). The Commission recommended Judge Medley be suspended for thirty days without pay and reimburse the Commission $5,494.81 in hard costs.

The matter was set on this Court's docket for oral argument on August 26, 2025, pursuant to La. Supreme Court Rule XXIII, § 14. Because we find the Commission proved the allegations as set forth in Counts II and IV by clear and convincing evidence, we address those matters first.

## DISCUSSION

*Count II: "Deadbeat Dad" Advertisement*

Count II alleges that Judge Medley created a false and misleading campaign ad stating that her opponent, Judge Bruno, was a "deadbeat dad" who refused to pay child support for thirteen years. Count II also alleges that after Judge Bruno obtained a temporary restraining order ("TRO") prohibiting Judge Medley from airing or posting false statements in the ad, she posted commentary on her Facebook page restating the content of the ad, which appeared to violate the intention of the TRO.

The parties stipulated that the court record of *Kate Polk Lutken v. Christopher James Bruno*, No. 476-097 (24th JDC) ("*Bruno* divorce") included factual allegations made by Judge Bruno's ex-wife about his non-payment of child support and regarding an ongoing discovery dispute over income. The court record in the *Bruno* divorce reflects that child support for the minor child of the marriage had not previously been formally established until a Consent Judgment regarding ongoing child support and arrearages was ultimately rendered on April 2, 2009. Pursuant to the Consent Judgment, Judge Bruno was ordered to pay $4,000.00 per month retroactive to May 2007, to be paid in a lump sum together with future child support in the amount of $115,261.00. The order further provided that Judge Bruno must pay 100% of the child's high school tuition, registration, books, and supply fees as well as his health insurance, extraordinary medical expenses, and car insurance.

4

The parties also stipulated that Judge Medley and her campaign reviewed the divorce record, which included pleadings, orders, judgments, and other documents. From that record, the campaign produced a video advertisement accusing Judge Bruno of being "called a judge by some and a deadbeat dad by others," refusing to "pay a single dime in child support" for thirteen years, and "legally maneuvering" in refusing to provide discovery of his income (alleging Judge Bruno "made millions during the time" at issue). Judge Bruno learned through a media outlet that Judge Medley intended to air the commercial during Monday Night Football on September 21, 2020. The same afternoon, before the campaign ad aired, Judge Bruno filed for a TRO and preliminary and permanent injunction seeking to enjoin Judge Medley from airing the commercial. On September 21, 2020, Judge Paulette R. Irons granted the TRO in an order stating as follows:

> **IT IS HEREBY ORDERED** that JENNIFER M. MEDLEY, individually, her campaign committee, her campaign staff, her agents, employees, representatives, and assigns and any and all persons, firms, or corporations acting or claiming to act on behalf of JENNIFER M. MEDLEY are restrained, enjoined, and prohibited from distributing printed material, airing television or radio commercials, publishing, or causing to published [sic] advertisements, or to post on social media sites ads which falsely state that CHRISTOPHER J. BRUNO is a dead beat dad or that he failed to pay child support, or that he refused to provide discovery to his former spouse regarding his income, or any statement or suggestion that would lead a person of reasonable intelligence to conclude that any of the statements were true, and any advertisement or posting shall immediately be taken down or removed.

In addition to granting the TRO, the district court scheduled a preliminary injunction hearing for September 30, 2022.

News media reported on the TRO and directly quoted statements identified in the pleadings that quoted the advertisement. Judge Medley's campaign Facebook page also reposted a news article reporting on the TRO with the following commentary: "Judge Chris Bruno is trying to hide the fact he didn't pay child support for more than a decade. He can deny it, but records show his ex-wife's long struggle

5

in court to get him to take responsibility. This is just one of the many cases, though, where he disrespected women and families in the courtroom . . . ."[7]

Before the scheduled hearing on the injunction, Judge Bruno filed a Motion for Contempt on September 22, 2020, asserting Judge Medley violated the TRO through posts on her Facebook account. A hearing on both the issue of contempt and the preliminary injunction was held on September 30, 2022, before *Ad Hoc* Judge Freddie Pitcher, Jr., who did not find Judge Medley in contempt or in violation of the TRO. He provided the following oral reasons for judgment:

> . . . the allegations that Ms. Medley and her campaign violated the temporary restraining order, the record, based on the testimony and the filings that the contempt is basically based upon repostings of something that was already in the public record. And – and, consequently, in order to hold the Defendant and her campaign in contempt, there must be – a knowing falsity and a repeating of the falsity. But when there is something reposting that's already in the public record, the Court don't [sic] see how is [sic] that would make Ms. Medley and her campaign belligerently going against the temporary restraining order. So that's the Court ruling.

*Bruno v. Medley,* No. 20-07905.

Although the Motion for Contempt was denied, the district court ultimately concluded the commercial contained falsities, noting that Judge Bruno did not refuse to pay child support or to provide discovery in his divorce proceedings. Consequently, the district court granted the preliminary injunction and ordered that Judge Medley and those acting on her behalf be prohibited from distributing any material which falsely states that Judge Bruno is a "deadbeat dad" or failed to pay child support or provide discovery to his former spouse. Judge Medley appealed

---

[7]The parties also stipulated that the following commentary was posted on the campaign Facebook page by Judge Medley's campaign public relations representative:

> From Cheron Brylski: "Here's a fun detail for you political junkies . . . CDC-F Judge Chris Bruno got a TRO in less than ½ hour to stop his opponent Jennifer Medley from airing an ad Monday night about his 13 years of refusing to pay child support. Ms. Medley's motion to recuse this matter - sitting on Mr. Bruno's colleague's desk for 3 hours unaddressed . . . So much for fairness, transparency and . . . how does Mr. Bruno sell himself? Ah yes . . . as someone who moved things quickly in CDC because he is Chief Judge."

this ruling; Judge Bruno answered the appeal, seeking frivolous appeal damages. The Fourth Circuit affirmed (but declined to award frivolous appeal damages), finding the record supported the district court's finding of actual malice and that Judge Medley "knew her commercial was false or at the very least acted with reckless disregard for whether her statements in the commercial were false." *Bruno v. Medley*, 20-515, p. 17 (La. App. 4 Cir. 11/2/20), 310 So. 3d 580, 590. As a result of this litigation, the "deadbeat dad" video advertisement was never published, broadcast, or distributed.

With regard to Count II, the hearing officer found the Office of Special Counsel proved by clear and convincing evidence that Judge Medley violated Canons 7A(9), 7B(1), and 7B(3) of the Code of Judicial Conduct and La. Const. art. V, § 25. The Commission agreed, rejecting Judge Medley's "protected speech" arguments under the First Amendment and finding the statements in the "deadbeat dad" advertisement were false and not constitutionally protected. Although Judge Medley initially argued her advertisement was accurate in stating that Judge Bruno refused to pay child support for thirteen years because he was found in arrears, the Commission found the arrearage only went back to two years (2009 to 2007), and the consent judgment acknowledged credit for payments.

The Commission further found Judge Medley violated the "spirit" of the TRO when she reposted the article: "Judge Chris Bruno is trying to hide the fact he didn't pay child support for more than a decade." The Commission explained that anyone who obtains a court order enjoining the airing of an ad because it asserts a falsity would want to enjoin assertion of the falsity by other mediums. It concluded Judge Medley's social media posts were false and defamatory. Thus, the Commission alleged, she failed to "maintain the dignity appropriate to judicial office and act in a manner consistent with the . . . integrity . . . of the judiciary," in violation of Canon 7B(1).

7

While the Commission recognized the advertisement never aired, it noted Canons 7A(9), 7B(1), and 7B(3) contain no requirement about type or extent of dissemination of false and undignified campaign statements that otherwise violate the canons, and the ad was not broadcast or aired only due to Bruno's litigation efforts, which included responding to a "frivolous" appeal by Judge Medley.[8]

Moreover, the Commission argued, Judge Medley's violation of the TRO through posting and reposting of the false statements on social media violated Canons 7A(9), 7B(1), and 7(B)(3). Specifically, in creating the "deadbeat dad" advertisement, the Commission found Judge Medley "knowingly [made], or cause[d] to be made, a false statement concerning the identity, qualifications, present position, or other fact concerning the candidate or opponent," in violation of Canon 7A(9); failed to "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity and independence of the judiciary," in violation of Canon 7B(1); and failed to "take reasonable measures to ensure that other persons do not undertake, on behalf of the judge or judicial candidate, any activities prohibited under" Canon 7, in violation of Canon 7B(3). The Commission further found that, in violation of La. Const. art. V, § 25, Judge Medley's conduct in connection with the "deadbeat dad" campaign ad constituted willful misconduct relating to her official duty and persistent and public misconduct prejudicial to the administration of justice that brought the office into disrepute.

In her argument to this Court, and throughout these proceedings, Judge Medley has consistently maintained that the First Amendment protects the campaign video content as core political speech, relying on United States Supreme Court

---

[8] As mentioned, the majority of the court of appeal denied Judge Bruno's motion to award damages for frivolous appeal. However, Judge Lobrano dissented on this point, stating "I can discern no other purpose in bringing this appeal than to further harass Judge Bruno with litigation to continue the promotion of a false campaign ad and the perpetration of the falsities in the media." *Bruno*, 20-515, p. 18, 310 So. 3d at 591 at n. 12.

precedent in support.[9]  Specifically, Judge Medley emphasizes that the First Amendment is intended to "protect the free discussion of governmental affairs . . . . including discussions of candidates" for political office. *Buckley v. Valeo*, 424 U.S. 1, 14-15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (internal citation omitted).  She argues that any restriction on "core political speech" requires courts to apply "exacting scrutiny," upholding restriction only if it is narrowly tailored to serve a compelling state interest. *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 115 S.Ct. 1511, 1513, 131 L.Ed.2d 426 (1995). She further urges this Court to adopt the analysis for application of the First Amendment in a judicial discipline case concerning judicial election campaign speech in campaign advertising as set forth in *In re Chumra*, 608 N.W.2d 31 (Mich. 2000), *on rehearing, In re Chumra*, 626 N.W.2d 876 (Mich. 2001) (*"Chumra II"*).

In *Chmura*, the court fashioned a test to determine whether a judicial candidate had violated Michigan's Canon 7B(1)(d).[10]  First, the public communication must be analyzed to see if the statements are literally true.  If so, there is no violation.  However, if the statements convey an inaccuracy, the communication must be analyzed as a whole to determine whether the communication is substantially true despite the specific inaccuracy.  If the "gist" is also false, the judicial candidate is determined to have used or participated in the use of a false communication.  *Id.*  If so, it must then be determined whether the communication was made knowingly or with reckless disregard.  If that is the case, the candidate violated Canon 7B(1)(d).

---

[9]*Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Mills v. Alabama*, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966); *New York Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).

[10]Canon 7B(1)(d) of Michigan's Code of Judicial Conduct provides that "[a] candidate, including an incumbent judge, for a judicial office: . . . . (d) should not knowingly, or with reckless disregard, use or participate in the use of any form of public communication that is false."

9

Judge Medley also argues that Count II was not proven by clear and convincing evidence. Judge Medley considers the Fourth Circuit's opinion finding falsities in the "deadbeat dad" campaign video contrary to the law in its failure to correctly apply First Amendment law. We disagree.

While we agree with Judge Medley that the district court found (and the parties stipulated) that she was *not* in violation of the Temporary Restraining Order and the Commission erred in alleging the contrary, we do not agree with Judge Medley that these facts support her position that the conduct in question was protected political speech. It is well settled that a candidate's speech during an election campaign "occupies the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346, 115 S.Ct. 1511, 1518, 131 L.Ed.2d 426 (1995). Moreover, any restrictions on "core political speech" are subject to a strict scrutiny analysis where the government has the burden of proving the restriction is "(1) narrowly tailored, to serve (2) a compelling state interest." *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002), citing *Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S.Ct. 2528, 2534, 153 L.Ed.2d 694 (2002). As noted by the court of appeal in *Bruno v. Medley,* 20-515 (La. App. 4 Cir. 11/2/20), 310 So. 3d 580, regarding the interplay between false political speech and constitutional protections, this Court has stated:

> The standard for constitutionally protected false speech in the context of public figures was given in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In that case, the Court held the Constitution prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct "unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Although this standard was applied in the context of civil defamation suits, **it is clear the standard defines the parameters of protected speech involving public figures.**
>
> *State v. Burgess*, 543 So. 2d 1332, 1335 (La. 1989)

10

Although no direct constitutional attack on our Canon is made herein, we find unpersuasive Judge Medley's arguments that the speech contained in this "deadbeat dad" advertisement is protected under the First Amendment. Canon 7(A)(9) provides that a judge or judicial candidate shall not "***knowingly make***, or cause to be made, *a false statement* concerning the identity, qualifications, present position, or other fact concerning the candidate or an opponent." (emphasis added). The Canon makes no specific mention of negligent misrepresentation or misleading statements.[11] Notably, it has been stated that "[t]he narrowest way to keep judges honest during their campaign is to prohibit them from consciously making false statements about matters material to the campaign." *Winter v. Wolnitzek*, 834 F.3d 681, 693 (6th Cir. 2016). We agree that "a ban on conscious falsehoods satisfies strict scrutiny" and find that here, this standard has been met. *Id.*

Judge Medley testified she reviewed Judge Bruno's divorce record prior to making the advertisement and was responsible for the advertisement. The divorce record, as found by the Fourth Circuit in *Bruno v. Medley*, *supra*, and as acknowledged by Judge Medley, did not contain an order to pay child support, other than the 2009 Consent Judgment, which ordered Judge Bruno to pay retroactive child support to 2007 (subject to "credits for previous payments made"). Not only did Judge Medley acknowledge there was no judgment ordering thirteen years of past due child support payments, as alleged in the advertisement, she also admitted that she knew that the payment of tuition and health insurance are, indeed, support payments under the law. The pleadings she relied upon clearly recognized Judge Bruno had made those payments.

---

[11]In fact, it has been found that a judicial canon's ban on "misleading statements" fails a strict scrutiny analysis because "'negligent misstatements,' in contrast to knowing misstatements, 'must be protected in order to give protected speech the 'breathing space' it requires,'" even in judicial elections." *Winter v. Wolnitzek,* 834 F.3d 681 (6th Cir. 2016), citing *Weaver v. Bonner*, 309 F.3d 1312, 1320 (11th Cir. 2002). "Unknowing lies do not undermine the integrity of the judiciary in the same way that knowing lies do, and the ability of an opponent to correct a misstatement 'more than offsets the danger of a misinformed electorate.'" *Id.*

11

Moreover, despite the advertisement stating that Judge Bruno was "called judge by some and a deadbeat dad by others," Judge Medley testified in Judge Bruno's suit against her that there was no evidence that any other person besides herself called Judge Bruno a "deadbeat dad." In light of these facts contained in the record, we find Judge Medley knowingly made false statements about her opponent Judge Bruno and the Commission proved by clear and convincing evidence that Judge Medley violated Canons 7A(9), 7B(1), and 7B(3) of the Code of Judicial Conduct and brought the judicial office into disrepute in violation of La. Const. art. V, § 25.

*Count IV: Unreported Campaign Payments*

The parties stipulated that in connection with the production of the campaign video referenced in Count I, Judge Medley made two payments to the plaintiff in *Doe v. Lewis* ($700 on September 28, 2020, and another for $500 on October 28, 2020) from her personal bank account via the Zelle banking application. Judge Medley testified in her supplemental sworn statement that the payments were intended to reimburse for expenses that plaintiff incurred for the production of the "scorned woman" video that is the subject of Count I. As campaign expenditures, the payments were required to be reported on her campaign finance report pursuant to La. R.S. 18:1483(9) and 18:1495.4-1495.5, but Judge Medley's campaign finance reports failed to list the payments as campaign expenditures.[12]

The Commission discovered the payments only after issuing a subpoena and receiving Judge Medley's bank statements. Judge Medley admitted it was an "error"

---

[12]Prior to amendment, La. R.S. 18:1495.2(D)(2) (now La. R.S. 18:1495.2(C)(1); Acts 2025, No. 398, § 1, eff. June 20, 2025) provided that a campaign expenditure may be made by electronic funds transfer provided that "records are maintained as to the objects or services for which such transfer of funds was made" and that "[d]etailed records of each electronic fund transfer shall be maintained" as part of the records required by La. R.S. 18:1495.3. Such records were not maintained for the above referenced payments.

and "oversight" that she did not properly report the payments made to the person appearing in the "scorned woman" advertisement. Judge Medley admitted that the Board of Ethics was not aware of the unreported payments. She further admitted that she had not amended her reports because she did not "want to change course on anything in this proceeding," and that she was "waiting to get through this because of the jurisdictional arguments that have been made by both sides," but she was planning on making the amendment once she consulted with her CPA.

The Commission asserts that the payments would have been of interest to her opponent as the kinds of expenditures that would be subject to campaign finance laws, which are designed to bring transparency to election spending. Following her appearance before the Commission, Judge Medley filed a Motion to Supplement the Record to introduce exhibits indicating that she amended her finance disclosure reports on April 5, 2025. The Commission found that OSC proved by clear and convincing evidence the allegations that Judge Medley violated Canon 7B(1) of the Code of Judicial Conduct and La. Const. art. V, § 25.

Judge Medley asserts that the Commission's discipline action against her is an infringement on the power, authority, and exclusive jurisdiction of the Louisiana Board of Ethics, because enforcement of the Campaign Finance Disclosure Act, La. R.S. 18:1481, *et seq.*, rests exclusively with the Louisiana Board of Ethics.[13] Judge Medley asserts the Judiciary Commission was constitutionally created pursuant to La. Const. art. V, § 25 and does not have the authority to administer or enforce either the Code of Governmental Ethics, La. R.S. 42:1101, *et seq.*, or the Campaign

---

[13]In support, Judge Medley cites this Court's decision in *Advanced Benefits Concepts, Inc. v. Blue Cross Blue Shield of Al.,* 23-1291 (La. 9/6/24), 392 So. 3d 308. The issue presented in *Advanced Benefits Concepts* was whether the Board of Ethics has exclusive jurisdiction to determine whether a contract was null and void because of a violation of the Louisiana Code of Ethics (that violation being plaintiff's failure to register as a lobbyist). This Court held the district court was not deprived of subject matter jurisdiction by any exclusive grant of jurisdiction to the Board. In so finding, the Court found the language contained in the Executive Branch Lobbying Act, La. R.S. 49:78.1, did not contain the word "exclusive" and allows for "other penalties or other remedy or relief provided by law" which would include the assertion of affirmative defenses and a reconventional demand. Judge Medley asserts the Campaign Finance Disclosure Act does not contain the same language.

Finance Disclosure Act.  In short, Judge Medley asserts the Commission only has jurisdiction to determine whether she violated the Code of Judicial Conduct.  We disagree.

There is nothing in our body of law or jurisprudence that prohibits the Commission from concluding that serious violations of the Campaign Finance Disclosure Act also constitute judicial misconduct. While it is generally not the Commission's role to police routine compliance with the Campaign Finance Disclosure Act, this was not an inadvertently missed deadline or a mere clerical, accounting, or technical error.  Judge Medley agrees that her failure to report these payments was a violation. Based upon the totality of the circumstances and the facts of this record, Judge Medley knowingly failed to report these two payments with the intent and in the hope of concealing them.  It was not until they were received under subpoena that they were discovered.  Thus, we agree the Commission has proven by clear and convincing evidence that Judge Medley's failure to report these payments is a violation of Canon 7B(1)'s requirement that a judicial candidate "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity and independence of the judiciary."  Furthermore, we also find Judge Medley's conduct in connection with these unreported payments to be "willful misconduct relating to [her] official duty" in violation of La. Const. art. V, § 25.

We now turn to the two counts the Commission did not prove by clear and convincing evidence: Counts I and III.


*Count I: "Scorned Woman" Ad*

Judge Medley and OSC stipulated that Judge Bruno presided over a bench trial in *Jane Doe v. Herbert Lewis, Jr.,* on January 21, 2020.  In that case, the plaintiff ("K.T.") sued the defendant for allegedly raping her in 2013, and the defendant filed a reconventional demand for defamation.  The parties further stipulated that the

14

plaintiff in *Doe* moved to continue trial on January 10, 2020. Judge Bruno denied the motion, stating on the record to plaintiff's counsel, "[A]s a lawyer and as a male this is a very, very awful allegation if it is not true, right? It is his right- he needs to get this over with. It is hanging over his head and stressful . . ." Ultimately, Judge Bruno dismissed K.T.'s lawsuit with prejudice, finding she failed to carry her burden of proof, and rendered judgment in favor of defendant's reconventional demand for defamation. This judgment was affirmed on appeal. *Doe v. Lewis*, 20-320 (La. App. 4 Cir. 12/30/20), 312 So. 3d 1165.

Judge Medley's campaign created a video involving the plaintiff in *Doe v. Lewis*. In the unscripted video, a darkened figure (the plaintiff, K.T.) appears with the words "Actual Rape Victim" and "Appeared before Chris Bruno" on the screen.[14] She states:

> I was raped seven years ago, and finally after seven years I got my day in court. Or so I thought. I had the misfortune of appearing before Judge Christopher Bruno and from the start, I could feel his bias against me. He called me a scorned woman and didn't find me credible. Being raped is something no woman should have to endure and Judge Christopher Bruno's treatment of me was just as bad.[15]

The Louisiana Judicial Campaign Oversight Committee ("JCOC") received a complaint regarding this video on September 30, 2020, and in response to a letter of inquiry, Judge Medley informed the JCOC that she "in good faith directed that the campaign video be temporarily withdrawn from social media and pulled from television rotation."

The JCOC found no evidence Judge Bruno was biased against plaintiff and further found "Judge Bruno never called the plaintiff a scorned woman." The JCOC

---

[14]According to the record, these words appearing on the screen in the video are called a "chyron" (defined as "a caption superimposed over usually the lower part of a video image (as during a news broadcast)). https://www.merriam-webster.com/dictionary/chyron.

[15]A production company created the "Actual Rape Victim" chyron. The video was produced by Fire on the Bayou and SDT Productions, which is owned by Sidney Torres, IV, part-owner of the building that houses Fire on the Bayou.

noted that in Judge Bruno's reasons for judgment, he wrote that K.T. "testified that she did not want to be a scorned woman."[16] The JCOC found the advertisement contained false and misleading statements regarding Judge Bruno.[17] The Commission agreed.

The hearing officer found the OSC proved by clear and convincing evidence the allegations in Count I that Judge Medley violated Canons 7A(9) and 7B(1) of the Code of Judicial Conduct and La. Const. art. V, § 25. The Commission agreed, rejecting Judge Medley's argument that the advertisement contains protected First Amendment speech. The Commission maintains that false campaign statements should not be considered constitutionally protected, and Canon 7A(9)'s prohibition against knowingly making a false statement about a judicial opponent is narrowly tailored to Louisiana's compelling interest in ensuring the integrity of judges and the public's confidence in an honest judiciary. The Commission concluded the "scorned woman" advertisement contained false statements in violation of Canon 7A(9), including its identification of the plaintiff as an "actual rape victim" despite a legal determination to the contrary, stating that Judge Bruno called her a "scorned woman" when he did not, and stating that Judge Bruno was biased against the plaintiff without evidence. The Commission further found Judge Medley failed to "maintain the dignity appropriate to judicial office and act in a manner consistent

---

[16]The January 21, 2020, transcript of the hearing in the *Doe v. Lewis* matter establishes plaintiff's testimony that she did not feel like a woman scorned and did not recall saying in her deposition that she did not want to be a scorned woman.

[17]The JCOC's Public Statement provided:

Based on the evidence presented, the Committee found no evidence that Judge Bruno was biased towards plaintiff. The Committee also found that Judge Bruno never called the plaintiff a scorned woman. Instead, in the ten (10) page [] Reasons for Judgment, after weighing all the evidence provided at trial, Judge Bruno found the plaintiff's testimony not credible and dismissed the plaintiff's lawsuit. The Committee believes this video created by the Medley Campaign contains false and misleading statements regarding Judge Brunno in connection with *Doe v. Lewis*, No. 2014-2067 (Civil District Court for the Parish of Orleans), in violation of Canon 7A(9).

16

with the impartiality, integrity and independence of the judiciary," in violation of Canon 7B(1). The Commission concluded Judge Medley's actions constituted willful misconduct relating to her official duty and persistent and public misconduct prejudicial to the administration of justice that brought the judicial office into disrepute, in violation of La. Const. art. V, § 25(C).

Judge Medley reiterates the First Amendment arguments made in response to Count II, urging that the campaign videos at issue include rhetorical hyperbole, vigorous epithet and statement of opinions, none of which can reasonably be said to constitute knowingly false statements about Judge Bruno and should not serve as a basis for sanctioning Judge Medley. The videos, Judge Medley argues, convey a critical opinion of Judge Medley's election opponent's performance on the bench and do not run afoul of the Canons.

Judge Medley also asserts that the Notice of Hearing alleged that only two statements in the campaign video regarding *Doe v. Lewis* were false and misleading: that Judge Bruno was biased towards K.T. and that he called her a scorned woman. Without prior notice, the Commission determined a ***third*** statement in the campaign video was false – the chyron that identified the plaintiff as "Actual Rape Victim, Appeared before Christopher Bruno." Simply put, the Commission never alleged that the phrase "actual rape victim" was false and a violation of Canon 7A(9). Judge Medley avers she has a right to fair notice of a charge and cannot be sanctioned for conduct which was not in the original formal charge. *In re Quirk*, 97-1143 (La. 12/12/97), 705 So. 2d 172, 185-86 ("[t]he charges against the respondent must be so specific as to fairly inform him of the misconduct of which he is accused.").

We agree. The Commission did not prove by clear and convincing evidence that Judge Medley made knowingly false statements in violation of Canons 7A(9) or 7B(1) of the Code of Judicial Conduct as alleged in Count I. The advertisement portrays the victim-plaintiff's perception of her trial before Judge Bruno, and while

17

Judge Medley was responsible for its creation, we do not find it rises to the level of "knowingly" false statements regarding her opponent. Moreover, based upon Judge Bruno's written reasons for judgment, we do not find it unreasonable that the victim-plaintiff perceived that Judge Bruno called her a scorned woman. As noted above, Judge Bruno's written reasons state that the "plaintiff testified she did not want to be a scorned woman," but the transcript does not reflect that to be true. Finally, we find persuasive Judge Medley's argument that she was not originally charged with the falsity of the chyron ("Actual Rape Victim") in the charges against her, and thus, she cannot now be held accountable for its alleged falsity. As a result, we dismiss the charges in Count I.

*Count III*: *Campaign Loan*

The parties stipulated that on September 11, 2020, during Judge Medley's campaign for judicial office, Judge Medley obtained a $100,000 loan from IV Capital, LLC, a business owned by Sidney Torres, IV. She stated the purpose of the $100,000 loan was to make improvements at a property located at 4725-27 Baudin Street in New Orleans, Louisiana.[18] However, she did not spend most or all of the funds on improvements. Rather, her campaign finance reports disclose that also on September 11, 2020, she personally loaned her campaign $85,000 and on September 17, 2020, she personally loaned her campaign $15,000. Thus, the $100,000 Judge Medley personally loaned to her campaign appeared to be in substantial part derived from the $100,000 loan she obtained from IV Capital.[19]

---

[18]In Judge Medley's sworn statement taken on March 22, 2022, when asked "what kind of collateral did you put up for IV Capital's loan of $100,000 to you?" She responded: "My house on Baudin Street in Mid City."

[19] Prior to loaning the funds to Judge Medley, Mr. Torres consulted with attorney John Litchfield about the propriety of the loan. Mr. Litchfield then consulted with Kathleen Allen, the Ethics Administrator and General Counsel of the Louisiana Board of Ethics. Mr. Litchfield advised Mr. Torres the loan was permissible. Based upon the advice of counsel, IV Capital loaned the money to Judge Medley, who then relied upon the foregoing advice provided by Mr. Litchfield to Mr. Torres. There is no allegation of any impropriety or illegality on the part of Mr. Torres, who relied

In the two months prior to the loan transactions, Judge Medley had $36,000 - $38,000 available in her bank account. At the time the $100,000 loan was confected, her property had a $149,000 mortgage but was appraised at $273,000, and later at $360,000, and thus she had sufficient equity for a loan.[20] Judge Medley ultimately refinanced and repaid the loan to IV Capital in full (with interest) on August 24, 2021.

During the Commission's investigation, the Louisiana Board of Ethics opened an investigation as to whether the loan transaction between IV Capital and Judge Medley violated the Campaign Finance Disclosure Act. The Board ultimately closed the complaint, concluding:

> The investigation report revealed that Ms. Medley received a secured loan from IV Capital LLC, and used the proceeds of that loan as the source of loans to her campaign. However, the Board determined that there was insufficient evidence to establish that IV Capital, LLC was aware of Ms. Medley's intent to finance her campaign with the loan proceeds.

***

> Based upon the totality of the circumstances in this matter, the Board has declined to take any further action in this matter. The Board does, however, caution Ms. Medley to make every effort in the future to ensure her compliance with the Campaign Finance Disclosure Act . . .[21]

Regarding Count III, the hearing officer found the OSC proved by clear and convincing evidence the allegations that Judge Medley violated Canon 7B(1) of the Code of Judicial Conduct and La. Const. art. V, § 25. The Commission agreed but specifically noted it did not find the campaign loan violated the Campaign Finance

---

upon the advice of diligent counsel who cleared the transaction with the top echelon of the Board of Ethics.

[20]During his sworn statement, Mr. Torres testified that he did not ask, nor did he care, how Judge Medley used the IV Capital funds as long as there was sufficient equity in the property and IV Capital was ultimately repaid.

[21]A determination of the Board of Ethics to decline to purse action on an alleged violation should be given great weight, while a decision of the Ethics Board to advance a charge to public hearing under R.S. 42:1141 must still be weighed against the much higher burden of proof that Constitution places on the Commission.

Disclosure Act, La. R.S. 18:1481, *et seq.*[22] Rather, as noted above, the Commission alleged the loan "gave the appearance of attempting to circumvent campaign finance law and/or exploiting a loophole in the law." The Commission reasoned that while Judge Medley may have strictly complied with the letter of the law with a "wink and a nod," she undermined its purpose to gain a personal advantage in the election. The Commission alleges this behavior fails to "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity and independence of the judiciary." *See* Code of Judicial Conduct Canon 7B(1). The Commission also asserted Judge Medley's actions regarding the loan constituted a violation La. Const. art. V, § 25(C). We disagree.

The allegations as set forth in Count III have not been proven by clear and convincing evidence.[23] The Louisiana Board of Ethics expressly found no violation of the Campaign Finance Disclosure Act concerning Judge Medley's loan from IV Capital, LLC, and the Commission conceded the same, acknowledging "there was no clear evidence that Judge Medley violated the CFDA." Instead, the Commission vaguely asserted the circumstances surrounding this loan "gave an *appearance* of *attempting* to circumvent campaign finance law and/or exploiting a loophole in the law." (emphasis added). The charge appears to be that there was compliance with the law, but the Commission finds the state of the law odious. In light of the record before us, we do not find the Commission has met the standard of proof by clear and convincing evidence of a violation of the Code of Judicial Conduct or La. Const. art. V, § 25(C) as alleged in Count III, and we therefore dismiss those charges.

---

[22]The Commission stated the evidence does not establish that Judge Medley violated the CFDA, because: (1) campaign contribution limits do not apply to a candidate making a personal loan to their own campaign; and (2) in order for a contribution limit to apply to a loan to a candidate from someone other than a state bank or federally chartered depository institution, the loan must be made "for the purpose of supporting, opposing, or otherwise influencing the . . . election . . . of any person to public office." La. R.S. 18:1483, 1505.2(H)(3), (5)–(6).

[23]We again decline to adopt Judge Medley's argument that the Louisiana Board of Ethics maintains exclusive jurisdiction to administer and enforce the Campaign Finance Disclosure Act.

## DISCIPLINE

In determining the appropriate sanction, we are mindful that the primary purpose of the Code of Judicial Conduct is the protection of the public rather than simply to discipline judges. *In re Williams*, 11-2243, p. 13 (La. 1/24/12), 85 So. 3d 5, 10 (internal citations omitted). The discipline imposed depends on the facts of each case and the totality of the circumstances and is guided by the factors set forth in *In Re: Chaisson*, 549 So. 2d 259 (La. 1989).[24] In applying these factors, the Commission maintains that Judge Medley's misconduct was limited to the months before her first judicial election, but that she demonstrated a "pervasive pattern" of serious ethical missteps that failed to meet the standards of judicial candidates.

Judge Medley's conduct occurred outside of the courtroom but in her official capacity as a candidate for judicial office. Regarding whether Judge Medley has acknowledged the alleged misconduct, she has stipulated that she created the campaign ads, used the loan proceeds from IV Capital to personally loan her campaign money, and failed to report two campaign expenditures. However, Judge Medley declined to stipulate that her advertisements contained false statements, that the Judiciary Campaign Oversight Committee correctly determined she violated Canon 7A(9), that her social media postings contravened the purpose of the TRO, or that her actions otherwise were improper and constitute ethical misconduct.

---

[24] In *Chaisson,* this Court, citing *Matter of Deming,* 108 Wash.2d 82, 736 P.2d 639, 659 (1987), set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:

> (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

21

The Commission noted that Judge Medley, who was previously admonished in 2022 for holding an attorney in contempt without following the proper procedures required by law and for imposing a contempt sentence not authorized by law, assures the conduct will not be repeated in the future and acknowledged she made some mistakes during her campaign.

Finally, the Commission found that although Judge Medley's misconduct appears to have been motivated by a desire to win the election to judicial office, she did not exploit her position as a candidate. However, the Commission was troubled by Judge Medley's misconduct and its effect upon the integrity and respect for the judiciary, noting that judicial candidates should exercise restraint and rise above the indecorous behavior that has become all too common in campaigns for non-judicial office. As such, the Commission recommends Judge Medley be suspended from office, without pay, for thirty days and ordered to reimburse and pay to the Judiciary Commission the amount of $5,494.81.[25]

There are no previous cases of judicial discipline involving this specific type of misconduct. However, we find general guidance in *In re Cascio*, 96-2105 (La. 11/25/96), 683 So. 2d 1202, wherein this Court publicly censured a successful candidate for judge who represented himself during the campaign as an incumbent judge when he was not. In so finding, this Court reasoned that important "[m]isrepresentations of a candidate's identity, qualifications or present position are misleading to the public and bring the judicial office into disrepute." *Id.* at 1204. We also look to *In re Decuir*, 95-0056 (La. 5/22/95), 654 So. 2d 687, in which this Court publicly censured a judge for, among other misconduct, failing to list $2,300 in cash contributions he received during his campaign for judge.

---

[25]The OSC proposed that the Commission recommend this Court suspend Judge Medley for one year without pay.

In mitigation, Judge Medley asserts that at the time of this election, she was an inexperienced judicial candidate. She also asserts that the campaign advertisements at issue were either promptly withdrawn following complaints or never aired at all. Judge Medley urges the failure to report the campaign expenditures was unintentional, and the Louisiana Board of Ethics found no violation of the CFDA with respect to the loan taken from IV Capital.

Judge Medley also argues the delay in the instant disciplinary proceedings is a mitigating factor. The election at issue occurred on November 3, 2020, but the matter only now reaches this Court nearly five years later. In addition to the emotional toll of a five-year judicial discipline matter, releasing campaign misconduct findings suggesting suspension near the conclusion of the fifth year of Judge Medley's six-year term is prejudicial to her re-election campaign.

We agree with Judge Medley that the Judiciary Commission's extraordinary delay in the proceedings of this matter from institution to completion is troublesome; however, we do not find it sufficiently mitigating under the facts of this case. Judge Medley, as a candidate for judicial office, violated Canons 7A(9), 7B(1) and (3) by making knowingly false statements regarding her opponent and failing to report campaign finance expenditures in a clear violation of the Campaign Finance Act. In so doing, Judge Medley engaged in "willful misconduct relating to [her] official duty" in violation of La. Const. art. V, §25.

As such, in light of our findings that the Commission has proven by clear and convincing evidence Judge Medley violated Counts II and IV as alleged, but not Counts I and III, we find some period of suspension is necessary. We therefore accept the Commission's recommendation that Judge Medley be suspended for thirty days without pay but considering our finding that she was only proven guilty of half of the applicable Counts, we find that she shall only be required to reimburse the Commission one-half of its costs in the amount of $2,747.41.

23

**DECREE**

Upon review of the findings and recommendations of the Commission, and considering the record filed herein, we find the record establishes by clear and convincing evidence that respondent Judge Medley violated Canons 7A(9), 7B(1), and 7B(3) of the Code of Judicial Conduct as well as La. Const. art. V, § 25(C), as alleged in Counts II and IV. We do not find any violations as alleged in Counts I and III. Based upon our review of the record and the *Chaisson* factors, we find Judge Medley's misconduct justifies the recommended suspension of thirty days without pay.

Accordingly, it is hereby ordered that Judge Jennifer M. Medley of the Orleans Parish Civil District Court be suspended for a period of thirty days without pay. Judge Medley is further cast with certain costs of these proceedings and shall pay to the Judiciary commission the sum of $2,747.41 as reimbursement for expenses incurred by the Commission during its investigation and prosecution of this case, pursuant to La. Sup. Ct. Rule XXII, § 22.

**SUSPENSION ORDERED.**

# SUPREME COURT OF LOUISIANA

## No. 2025-O-00879

## IN RE: JUDGE JENNIFER M. MEDLEY

*Judicial Commission of Louisiana*

**WEIMER, C.J.**, additionally concurring.

The First Amendment[1] and the reciprocal provision of the Louisiana Constitution–La. Const. art. I, § 7, protect the right to freedom of speech. The level of protection is at its zenith when political speech is at issue. Since Louisiana elects judges, statements made in campaigns for judicial offices are afforded heightened protection. Even if campaign statements are unprofessional, to provide political speech the "exacting scrutiny"[2] and protection deserved, much leeway must be afforded. Ultimately, the voters must exercise the discernment and perspicacity to chose the right candidate for the office being sought taking all factors into consideration.

Over-sanctioning speech risks impairing freedom of speech, the free flow of ideas, and the ability to evaluate candidates. Although one may wholly disapprove of what is said, another's right to speak freely must be defended, unless a clear constitutional violation is found.[3] I agree with the majority findings related to dismissing Count I but finding a violation of Count II because Judge Medley knowingly made false statements that satisfies strict scrutiny in the Count II matter.

---

[1] U.S. Const. amend. I.

[2] **McIntyre v. Ohio Elections Commission**, 514 U.S. 334, 346 (1995).

[3] Attributed to Voltaire as a "Voltairean Principle," by Evelyn Beatrice Hall. <u>See</u> Victor Davis Hanson Quotesearch, June 1, 2015.

1

Further, when the Judiciary Commission argues there is an "appearance" of a violation of a temporary restraining order and one is taking advantage of a "loophole" in the law, it becomes challenging to find a violation that requires proof by clear and convincing evidence. Lastly, the delay in this matter, in which the facts were largely stipulated, seems excessive on this record.